COURT OF APPEALS OF VIRGINIA


Present:  Judges Baker, Bray and Overton
Argued at Norfolk, Virginia


JAMES MATTHEW MARSHALL
                                          OPINION BY
v.        Record No. 0394-97-1    JUDGE JOSEPH E. BAKER
                                      FEBRUARY 24, 1998
COMMONWEALTH OF VIRGINIA


         FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                    Verbena M. Askew, Judge

         David G. Wittan (David G. Wittan, P.C., on
         brief), for appellant.

         Kathleen B. Martin, Assistant Attorney
         General (Richard Cullen, Attorney General, on
         brief), for appellee.


     James Matthew Marshall (appellant) appeals from his bench

trial conviction by the Circuit Court of Newport News (trial

court) for attempted object sexual penetration in violation of

Code §§ 18.2-26 and 18.2-67.2 and first degree (felony) murder in

violation of Code § 18.2-32 in the death of his infant son, Tyler

Marshall.  On appeal, he challenges the sufficiency of the

evidence to support both convictions.  For the reasons that

follow, we find the evidence sufficient to support the object

sexual penetration conviction and hold that Rule 5A:18 bars our

review of the felony murder conviction.

     On April 30, 1996, between 2:30 p.m. and 3:00 p.m., Laurie

Hunter went to her sister's house, leaving her sleeping

eight-month-old son, Tyler, with appellant, Tyler's father, in

the home the three shared.  Neither Hunter nor appellant had

noticed anything unusual about Tyler's behavior or body while caring for him that day, and Hunter also had not observed anything unusual the previous night.

At about 5:00 p.m., appellant called Hunter because Tyler was "breathing funny" and was "sick." When Hunter arrived home several minutes later, Tyler was "pale" and "unresponsive," his breathing was "shallow and his eyes were . . . rolled back." Hunter observed no injuries other than some "little bruises on [Tyler's] stomach." Hunter called 911, and Tyler was taken by ambulance to Riverside Hospital. He was later transported to Children's Hospital of the King's Daughters in Norfolk, where he died at 9:15 a.m. on May 1, 1996.

Tyler was examined by a Dr. Michaels, who contacted Dr. Beck, Tyler's pediatrician. Dr. Beck testified that when she saw Tyler in the emergency room around 6:30 p.m. to 7:00 p.m. on April 30, 1996, she was unable to determine why he was ill. He had been "very healthy and well" when Beck had seen him for a routine check-up on April 3, 1996. Appellant told Dr. Beck that Tyler had vomited when he awoke from his nap around 3:45 p.m., was "very listless and restless," and had rolled off the couch. Dr. Beck observed scattered bruises on Tyler's abdomen and in his groin area, but did not examine his rectum. No medical procedures were performed on Tyler's anal area in the emergency room. Dr. Beck said that Tyler would have been cleaned if he had defecated, but that he had not done so while she was present.

Dr. Nakagawa, a pediatric intensive care specialist, began treating Tyler at about 11:00 p.m. after Tyler had been transported to CHKD in Norfolk.  Tyler was in "profound shock," and Nakagawa thought he might have a "hollow organ rupture," permitting organisms from his bowels to infiltrate his bloodstream.  Nakagawa noted that Tyler "had a lot of abdominal . . . tension" and some small bruises on his abdomen.  Nakagawa did not examine Tyler's back because he was "too unstable," and he performed no medical procedures on Tyler's anal area.  He concluded that Tyler "sustained blunt abdominal trauma, secondary to a punch injury, and . . . [the] circular marks [on Tyler's abdomen] [were] the results of either the fingertips . . . or the knuckles being struck against the abdominal wall."

After Tyler's death on the morning of May 1, 1996, Dr. Bush autopsied the infant's body at 2:00 p.m. that same day, concluding that Tyler died from a "severe blunt force trauma to the abdomen."  She did not believe that Tyler's injuries could have resulted from falling off a couch onto pillows, but testified that Tyler's abdominal injuries could have been caused by an adult falling on the child, hitting his abdomen with an arm or a leg.  Dr. Bush also observed "relatively fresh" contusions and abrasions around Tyler's anus and anal ring.  She testified that the injuries on the anal ring could not have been caused by the trauma to Tyler's abdomen, nor could they have been caused by a rectal thermometer.  She further testified that they could have

been caused by a human finger "[i]f the anus was digitalized or the finger was used in a rough manner." On cross-examination, she said that a rough towel in conjunction with a finger, "very roughly pushed up or battered against the anus," possibly could have caused the abrasions. She acknowledged that the bruising could have resulted from a prolapsed rectum, but said she saw no evidence of that condition on autopsy. She also detected no lacerations of the anus to indicate that penetration had occurred. All injuries appeared to be of the same age.

Hunter testified that appellant first told her over the telephone that Tyler had become ill and had thrown up on himself. When she arrived home, appellant said Tyler had rolled off the couch onto some pillows on the floor. On May 5, 1996, the day of Tyler's funeral, appellant called Hunter from jail and said he had fallen on Tyler accidentally while playing a game called "Pounce," in which he lunged toward the infant in order to make him laugh.

Appellant testified at trial that he hit Tyler in the stomach with his lower arm when he accidentally fell on Tyler while playing "Pounce." Initially, Tyler did not appear hurt, but twenty to thirty minutes later, he began to whine, became pale and had trouble breathing. While appellant was phoning Hunter, Tyler rolled off the couch onto some pillows. Appellant gave no explanation for his not having told Tyler's doctors that he fell on the child. He denied doing anything to Tyler that

would have injured his anus and denied knowing how those injuries occurred. He admitted to having five prior felony convictions.

Appellant's counsel moved to strike at the close of the Commonwealth's evidence and again at the close of all the evidence. The Commonwealth argued that Tyler's injuries were consistent with an attempt "to sodomize this child and stick [a] finger in [his anus]," and also argued that, under Code § 18.2-32, a murder during "the commission of attempted inanimate or animate object sexual penetration" is first degree murder. At no time in the trial court did appellant's counsel contend that proof of animate rather than inanimate object sexual penetration was insufficient to support a first degree murder conviction.

In convicting appellant of murder and attempted inanimate or animate object sexual penetration, the trial judge said she "did not find [appellant] very credible at all" and that "the evidence [was] consistent with guilt" as "everything points to [appellant] in this case, and the Court doesn't have any reasonable doubt at all."

Under familiar principles of appellate review, we examine the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. See Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). The judgment of a trial court will be disturbed only if plainly wrong or without evidence to support it. See id. The credibility of a witness and the inferences to

be drawn from proven facts are matters solely for the fact finder's determination.  See Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989).  In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that he or she is lying to conceal his or her guilt.  See Speight v. Commonwealth, 4 Va. App. 83, 88, 354 S.E.2d 95, 98 (1997) (en banc).

"Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt."  Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983).  However, "the Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993).  Whether a hypothesis of innocence is reasonable is a question of fact.  See Cantrell v. Commonwealth, 7 Va. App. 269, 290, 373 S.E.2d 328, 339 (1988).

I.

Appellant contends first that the circumstantial evidence was insufficient to support his conviction for attempted inanimate or animate object sexual penetration in violation of Code § 18.2-67.2[1] because it failed to exclude the possibility

_____

[1]That code section provides, in relevant part:

that the injuries to Tyler's anus occurred during medical treatment.[2]  We disagree.  By convicting appellant of attempted object sexual penetration, the trial court implicitly found that the only reasonable hypotheses flowing from the evidence were (1) that the injuries to Tyler's anus occurred while he was in appellant's care rather than while undergoing medical treatment and (2) that appellant was the criminal agent.  On this record, we conclude that finding is not plainly wrong.

The evidence showed that both Hunter and appellant had cared for Tyler, including changing his diapers, during the twenty-four hours preceding his medical treatment and that neither had noticed anything unusual.  While Tyler was alone in appellant's care that afternoon, appellant delivered a severe blow to Tyler's abdomen.  Thereafter, Tyler was transported by ambulance and treated at Riverside Hospital and Children's Hospital of the King's Daughters before dying at 9:15 a.m. the next morning.

Treating physicians Beck and Nakagawa testified that no

---

An accused shall be guilty of <u>inanimate or animate</u> object sexual penetration if he or she penetrates the . . . anus of a complaining witness who is not his or her spouse <u>with any object</u>, other than for a bona fide medical purpose . . . , and . . . [t]he complaining witness is less than thirteen years of age . . . .

Code § 18.2-67.2(A) (emphasis added).

[2]Appellant also challenges his first degree murder conviction on this basis.  Because we affirm the conviction for object sexual penetration on this issue, we also affirm the conviction for first degree murder on this issue.

medical procedures were performed on Tyler's anal area in either hospital. Although Dr. Beck testified that Tyler's anal area would have been cleaned if he had defecated while under medical care, he did not defecate while Dr. Beck was present. Autopsy physician Bush testified that Tyler's "relatively fresh" anal injuries were of the same age as his abdominal injuries and could not have been caused by the abdominal trauma or by a rectal thermometer. Although Dr. Bush believed they could have been caused by a finger, used with or without a towel, if "very roughly pushed up or battered against the anus," or by a prolapsed rectum, no evidence supported a hypothesis that the injury occurred in either of those ways. No evidence indicated that Tyler defecated at any time while under medical care or that any of the trained medical personnel rubbed Tyler's anus harshly enough to have caused the injuries described by Dr. Bush.

Furthermore, the trial judge was not required to believe appellant's testimony that he did not know how Tyler sustained those anal injuries. After giving conflicting accounts regarding Tyler's abdominal injuries, appellant, a convicted felon, admitted hitting Tyler in the stomach while Tyler was in his sole care, and the evidence proved that the anal injuries were of the same age.

Therefore, the only reasonable hypothesis flowing from the evidence, viewed in the light most favorable to the Commonwealth, is that appellant inflicted Tyler's anal injuries, that he did so

with the intent to penetrate Tyler's anus with some object, animate or inanimate, and that he performed a direct, but ineffectual, act to consummate the offense. See Code §§ 18.2-26, 18.2-67.2.

## II.

Appellant next contends that his conviction for first degree murder must be set aside on the ground that the evidence failed to prove the object with which he attempted penetration was inanimate, rather than animate, as required for a first degree murder conviction under Code § 18.2-32.[3] We hold that appellant failed properly to preserve the issue and that Rule 5A:18 bars our review.

Pursuant to Rule 5A:18, this Court will not consider trial court error as a basis for reversal where no timely objection was made, except to attain the ends of justice. Where an appellant makes a general objection to the sufficiency of the evidence that

---

[3]In contrast to Code § 18.2-67.2, which prohibits object sexual penetration with an inanimate or animate object, a conviction for first degree felony murder under Code § 18.2-32 requires proof of "[m]urder . . . in the commission of, or attempt to commit . . . forcible sodomy [or] inanimate object sexual penetration." Id. (emphasis added). Forcible sodomy, defined in Code § 18.2-67.1 to include "anallingus [sic], or anal intercourse" of a victim less than thirteen years of age, would, therefore, include some, but not all, acts of animate object penetration.

The Commonwealth argued at trial that Tyler's injuries were consistent with an attempt "to sodomize this child and stick [a] finger in [his anus]." The former act amounts to forcible sodomy, which would constitute a valid predicate offense; the latter act amounts to neither forcible sodomy nor inanimate object penetration and, therefore, would not constitute a valid predicate offense.

"[does] not specify in what respects [appellant] considered the evidence to be insufficient to prove [the charged offense,] . . . the issue of whether the evidence was insufficient to prove a particular [unmentioned] element of the offense was not properly preserved." Redman v. Commonwealth, 25 Va. App. 215, 220, 487 S.E.2d 269, 272 (1997).

To invoke the ends of justice exception to Rule 5A:18, the record must "affirmatively show[] that a miscarriage of justice has occurred, not . . . merely . . . that a miscarriage might have occurred." Mounce v. Commonwealth, 4 Va. App. 433, 436, 357 S.E.2d 742, 744 (1987). To satisfy this burden, an appellant must show "more than that the Commonwealth failed to prove an element of the offense. . . . [T]he appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense[,] or the record must affirmatively prove that an element of the offense did not occur." Redman, 25 Va. App. at 221-22, 487 S.E.2d at 272-73.

In this case, although appellant moved to strike, he failed to specifically assert that the evidence was insufficient to prove sexual penetration with an inanimate rather than animate object, as required to preserve the issue for appeal. Furthermore, the ends of justice exception does not permit us to excuse this failure, for the record does not show that appellant "was convicted for conduct that was not a criminal offense or . . . that an element of the offense did not occur." Id. at 222,

487 S.E.2d at 273.

Had the trial court convicted appellant for felony murder under the mistaken belief that proof of attempted penetration with any animate object[4] would support such a conviction, we would be permitted to invoke the ends of justice exception to reverse the conviction because this would constitute a conviction for a non-existent offense. In this case, the record indicates the Commonwealth's attorney mistakenly believed that a killing is felony murder under Code § 18.2-32 if it occurs during "the commission of attempted inanimate or animate object penetration." (Emphasis added). However, the record contains no affirmative indication that the trial court also operated under this mistaken belief, and we are bound by the presumption that the trial court knew and properly applied the law, see, e.g., Wilson v. Commonwealth, 23 Va. App. 318, 326, 477 S.E.2d 7, 10 (1996), convicting appellant for felony murder based on the predicate offense of attempted inanimate object penetration.[5]

Finally, the evidence did not affirmatively prove that the attempted penetration occurred with an animate rather than inanimate object. Therefore, we may not invoke the ends of justice exception to review appellant's challenge to the

---

[4]"[A]nallingus [sic], or anal intercourse," acts of animate object penetration that also constitute forcible sodomy as defined in Code § 18.2-67.1, provide valid predicate offenses under Code § 18.2-32. See the discussion, supra, at note 3.

[5]As set forth above, forcible sodomy is also a valid predicate offense.

sufficiency of the evidence on this element.  See <u>Redman</u>, 25 Va.
App. at 222, 487 S.E.2d at 273.

For the reasons set forth above, we hold that the evidence
was sufficient to support appellant's conviction for object
sexual penetration and that Rule 5A:18 bars our review of
appellant's assignment of error regarding the sufficiency of the
evidence to support his first degree murder conviction.
Therefore, we affirm both convictions.

<u>Affirmed.</u>