COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Bray and Senior Judge Overton
Argued at Norfolk, Virginia


CLYDE L. CAFFEE

v.   Record No. 2500-97-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE JAMES W. BENTON, JR.
MARCH 2, 1999

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Alan E. Rosenblatt, Judge

Keith Loren Kimball for appellant.

John H. McLees, Jr., Assistant Attorney
General (Mark L. Earley, Attorney General, on
brief), for appellee.


A jury convicted Clyde L. Caffee of two offenses of murder, malicious wounding, and three offenses of using a firearm in the commission of the three felonies.  On this appeal, Caffee contends the trial judge impermissibly forced him to surrender one constitutional right to assert another when the trial judge permitted the Commonwealth to use Caffee's pretrial testimony as evidence against Caffee at trial.  Because Caffee did not assert that objection at trial, we hold that Rule 5A:18 bars consideration of that issue on appeal.

I.

A grand jury indicted Caffee on two charges of murder, malicious wounding, and use of a firearm in the commission of the three felonies.  Two weeks prior to trial, Caffee's

---

*Pursuant to Code § 17.1-413, recodifying Code § 17-116.010, this opinion is not designated for publication.

court-appointed attorney sought to withdraw from his representation of Caffee. At a hearing on the motion, Caffee's attorney informed the judge that a difficulty existed because Caffee "does not want to go with our planned defense which was to be self-defense." Caffee's attorney stated that he and Caffee were "in extreme disagreement" and that he believed "Caffee's best defense and only defense" to the indictments was self-defense. When Caffee's attorney stated that Caffee "would . . . like to address the court," the judge administered an oath to Caffee and asked Caffee to speak. Caffee asked the judge to appoint another attorney to represent him and confirmed that he disagreed with the attorney on his defense strategy. As pertinent to this appeal, Caffee said the following in support of his request:

> I did not commit this crime. [My attorney] advised me that the best thing to go with is self-defense at the time, which I told my [attorney] that I did not commit this crime, did not shoot and kill those three young [men].
>
> Judge, pleading to self-defense is just like saying I did it. That's why I am trying to get a point to him. If I come in here saying self-defense, I admitted that I shot and killed them . . . which, sir, I did not do. That's why I want to go with not guilty to all the charges, sir.

The assistant Commonwealth's attorney opposed the motion to withdraw and to appoint a new attorney for Caffee. In his argument, the assistant Commonwealth's attorney stated "I don't

- 2 -

understand how there's any defense in the case except for self-defense."  The judge denied the motion to withdraw.

Two weeks later, a different judge presided at Caffee's jury trial.  The Commonwealth's evidence at trial proved that three weeks before the shooting incident, Willie Wiggins, Gregory Wiggins, Derrick Wiggins and their friend John Brooks had fought Caffee and Caffee's nephew at a nightclub.  All the participants in the fight knew each other.  When the fighting escalated, the nightclub's security guards sprayed everyone with Mace and forced them to leave.  Brooks and Gregory Wiggins testified that they heard gunshots as they left the parking lot.

On July 6, 1996, at 1:00 a.m., Caffee again encountered the four men at a house where alcohol was sold illegally.  The Commonwealth's first witness, Gregory Wiggins, testified that Caffee deliberately "bumped" Derrick Wiggins.  Later, when Gregory Wiggins exited the house, he observed Caffee arguing with Derrick Wiggins.  He testified that he saw Caffee draw a gun, that he observed "fire" coming from Caffee's direction, and that he saw Derrick Wiggins fall to the ground.  When he yelled to Willie Wiggins, who was standing nearby, to run away, Caffee shot Willie Wiggins.  Caffee then shot and wounded Gregory Wiggins.  Willie Wiggins and Derrick Wiggins were killed.  Gregory Wiggins testified that he and the two dead men were unarmed.

When Caffee's attorney cross-examined Gregory Wiggins, he sought leave to question Wiggins in depth concerning convictions for assault that were proved on direct examination and other

unadjudicated acts of violence.  He informed the judge that those matters were relevant to Caffee's theory of self-defense.  The Commonwealth objected to any examination of Wiggins concerning unadjudicated acts of violence.  Ruling that Caffee had not presented evidence of self-defense, the trial judge declined to permit Caffee's attorney to examine Wiggins concerning other acts of violence.

Reginald Wiggins, who was related to the three shooting victims, testified that Caffee said he was carrying a gun when he entered the house on July 6.  After Caffee "bumped" the shoulder of Derrick Wiggins, an argument and a fistfight ensued outside the house.  Reginald Wiggins testified that Caffee "pulled a gun out of his pants and [shot] my cousin, Derrick, in the chest."  Reginald Wiggins also testified that when Willie Wiggins ran, Caffee shot Willie Wiggins in the back and then shot Gregory Wiggins in the back.

The Commonwealth's evidence also proved that both Caffee and Willie Wiggins had particles of gunshot primer residue on their right hands.  Caffee's attorney established through the testimony of the Commonwealth's forensic expert that primer residue could result from several circumstances, including handling a weapon.  In his cross-examinations of Gregory Wiggins, John Brooks and Reginald Wiggins, Caffee's attorney sought to establish that the Wiggins group had been the aggressors in the June fight and again in the July encounter.

Near the end of its case-in-chief, the Commonwealth offered

as evidence the statements Caffee made at the pretrial hearing when his attorney sought to withdraw. The Commonwealth argued that the statement was admissible as a party admission. Caffee's attorney objected on the following three grounds: (1) that the evidence was overly prejudicial because Caffee would not be able to tell the jury the full context in which the testimony was given, (2) that the testimony was inadmissible to impeach Caffee because Caffee had not then testified, and (3) that Caffee had yet to present any evidence of self-defense to be rebutted by the testimony. Citing Alatishe v. Commonwealth, 12 Va. App. 376, 404 S.E.2d 81 (1991), the Commonwealth responded that the statement was admissible as a party admission and proved Caffee's guilty conscience.

The trial judge ruled that the testimony was admissible as a party admission. After the judge explained the nature of the transcript to the jury, a detective read to the jury the transcript of Caffee's pretrial testimony.

When the Commonwealth concluded its case-in-chief, Caffee presented witnesses in his defense. Caffee's cousin testified that he attempted to talk to all parties prior to the shooting incident to calm the situation. He also urged Caffee to leave the premises. Caffee told him that the Wiggins' group was harassing him and that he was tired of it. Caffee's cousin testified that he saw Derrick and Willie Wiggins strike Caffee, and then heard shots fired rapidly. He testified that he did not see who fired the shots.

Another witness for the defense testified that when she arrived at the house at 1:50 a.m., Caffee was near his car. Gregory Wiggins and several other men were following Caffee and profanely threatening to fight him. After she heard Caffee say "I'm not fighting," the men began beating him. She then heard about six rapid shots and later saw one of the Wiggins brothers shooting at Caffee's car as it drove away. Caffee did not testify.

The jury convicted Caffee on all charges.

II.

Relying upon Simmons v. United States, 390 U.S. 377 (1968), Caffee argues for the first time on appeal that his pretrial testimony was inadmissible at trial because he did not waive his Fifth Amendment privilege against self-incrimination when he sought to exercise his Sixth Amendment right to be represented by counsel. The Commonwealth contends that this issue is barred by Rule 5A:18 because Caffee did not specify this objection at trial. We agree that this issue is barred by Rule 5A:18.

We have consistently ruled that "[w]e will not consider a question raised for the first time on appeal, Rule 5A:18, even a constitutional question." Singleton v. Commonwealth, 19 Va. App. 728, 735, 453 S.E.2d 921, 926 (1995) (en banc). See also Cottrell v. Commonwealth, 12 Va. App. 570, 574, 405 S.E.2d 438, 441 (1991).

> "[T]he primary purpose of the contemporaneous
> objection rule is to advise the trial judge
> of the action complained of so that [the

- 6 -

> trial judge] can consider the issue intelligently and, if necessary, take corrective action to avoid unnecessary appeals, reversals, and mistrials." Consistent with this purpose, we have held that objections must be stated with specificity and that a general objection made "for the record" is insufficient.

Hogan v. Commonwealth, 5 Va. App. 36, 45, 360 S.E.2d 371, 376 (1987) (citations omitted).

When the issue raised on appeal is not the same issue raised in the trial court, the party has "failed . . . to preserve the issue for appeal."  Marshall v. Commonwealth, 26 Va. App. 627, 637, 496 S.E.2d 120, 125 (1998).  See also United States v. Branker, 418 F.2d 378, 381 (2d Cir. 1969) (a general objection at trial to the admission of evidence is insufficient to preserve for appeal the issue whether the admission into evidence of pretrial testimony violates the rule of Simmons).  At trial, Caffee's counsel argued three matters in support of his objection.  None of the arguments addressed the matter he now raises on appeal.

"To invoke the ends of justice exception to Rule 5A:18, the record must 'affirmatively show[] that a miscarriage of justice has occurred, not . . . merely . . . that a miscarriage might have occurred.'"  Marshall, 26 Va. App. at 636, 496 S.E.2d at 125 (citation omitted).  Upon our review of the record we cannot say that this is such a case.  The testimony that was admitted was but a minor piece of the evidence that overwhelmingly proved beyond a reasonable doubt that Caffee committed the offenses.

For these reasons, we affirm the convictions.

<u>Affirmed</u>.