COURT OF APPEALS OF VIRGINIA


Present:  Judges Bray, Annunziata and Frank


DONNA REID

                                    MEMORANDUM OPINION*
v.    Record No. 3074-99-4             PER CURIAM
                                     JULY 18, 2000
LOUDOUN COUNTY DEPARTMENT OF SOCIAL SERVICES


            FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
                    Thomas D. Horne, Judge

        (Nan M. Joseph; Byrd Mische P.C., on briefs),
        for appellant.

        (John R. Roberts, County Attorney; John W.
        White, Assistant County Attorney, on brief),
        for appellee.

        (Ann B. Vance; Carr & Vance, on brief),
        Guardian ad litem for the minor children.


     Donna Reid appeals the decision of the circuit court

terminating her parental rights to her children Charles

Armitage, Harold Reid, Jr., Natoshua Reid, and Emelia Reid.

Reid contends that the Loudoun County Department of Social

Services (DSS) failed to present sufficient evidence to support

the finding of the trial court under Code § 16.1-283.

Specifically, Reid raises the following questions on appeal:

        (1) whether the trial court erred in
        determining that the twelve month review
        required by Code § 16.1-283(C) ran between
        October 1994 and September 1995, although

────────────────────
     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

the juvenile and domestic relations district court (J&DR court) order setting forth the conditions was entered in December 1993;

(2) whether the trial court erred in considering Reid's circumstances in the twelve months after adoption of the October 1994 foster care plan when the emergency removal order was subsequently dismissed by the J&DR court on April 20, 1995.

(3) whether the evidence supported the finding of the trial court under Code § 16.1-283(C);

(4) whether the trial court erred in considering marital discord as a factor against Reid;

(5) whether the trial court erred in finding or considering Reid's visitation time with the children because DSS controlled her access;

(6) whether the evidence supported the conclusion of the trial court that termination was in the best interests of the children; and

(7) whether the trial court erred in reviewing the J&DR file when it was not tendered into evidence.

Upon reviewing the record and briefs of the parties, we conclude that this appeal is without merit. Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

"When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests." Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991). "Code § 16.1-283 embodies 'the statutory scheme for the . . . termination of residual parental

- 2 -

rights in this Commonwealth' [which] . . . 'provides detailed procedures designed to protect the rights of the parents and their child,' balancing their interests while seeking to preserve the family." Lecky v. Reed, 20 Va. App. 306, 311, 456 S.E.2d 538, 540 (1995) (citations omitted). "'In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted). The trial judge's findings, "'when based on evidence heard ore tenus, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. (citation omitted).

The record demonstrates that Reid and her husband had a long history of interaction with DSS. In December 1993, the J&DR court found Harold, Jr. and Natoshua to be neglected and awarded temporary legal custody to their paternal grandparents. In September 1994, the children were removed pursuant to an ex parte emergency removal order when two of the children were burned by an iron. DSS drafted a foster care plan dated October 24, 1994, with the goal of returning the children home to Reid and her husband. This plan was filed with the J&DR court without objection on March 2, 1995. Under this plan, the parents were required to

> provide [a home with] ample space for
> privacy and safe play. The caregivers need
> to be sober and attentive to safety factors.
> The parents need to be financially able to
> provide food, clothing and shelter, and be

able to identify financial priorities. The parents need to provide for the child's physical, intellectual and emotional needs. The parents need to be able to negotiate and problem solve without physical or verbal violence and without destructive [sic] of property. The parents need to demonstrate an ability to work with professionals and others in obtaining services for their children, and be able to recognize when services are needed. The parents need to maintain consistent and predictable contact with the child and provide financial support for his care while the child is in foster care.

That plan also identified the services provided to the family, including counseling and parent skill building; intensive home-based services; mental health counseling, including treatment for substance abuse and domestic violence; day care services; financial assistance; food assistance; financial counseling; and referral for educational services for Reid. On September 13, 1995, DSS filed with the J&DR court new foster care plans, dated September 5, 1995, with the changed goal of adoption. By order entered May 22, 1997, the Loudoun County Circuit Court found that the four children were neglected. The circuit court remanded the matter to the J&DR court. In the subsequent appeal de novo from the order of J&DR court terminating Reid's parental rights, the trial court conducted an evidentiary hearing and issued a nineteen-page opinion letter setting out its findings of facts and conclusions of law. The trial court found that DSS presented clear and convincing evidence sufficient to meet the statutory

requirements of Code § 16.1-283.  The circuit court entered an order on December 9, 1999, terminating Reid's parental rights.

At the time the children were placed in foster care, Charles was six, Harold, Jr. was three, Natoshua was two, and Emelia was one.  The children arrived in foster care in various stages of neglect, both physical and emotional.  All of the children needed mental health counseling to overcome the effects of emotional abuse and neglect.  The evidence presented at the termination hearing indicated that the children felt little sense of a bond with Reid, with the exception of Charles, who displayed sadness, anger, and emotional turmoil arising from his relationship with Reid.  The circuit court found that the children "have suffered a want of interest from their mother when it appears such affection was desperately sought," but that they had developed a sense of permanency and security from the stability of their foster homes.

### Twelve-Month Period

Reid contends that the trial court erred in determining that the twelve-month period of review required by Code § 16.1-283(C) ran from October 1994 and September 1995.  Reid concedes that counsel stipulated to the appropriateness of this period at trial, and points to nothing in the record where she preserved any objection for appeal.  Therefore, we do not consider this issue further.  See Rule 5A:18; see also Lee v. Lee, 12 Va. App. 512, 404 S.E.2d 736 (1991) (en banc).

## Circumstances Warranting Removal

Reid argues that the trial court erred in considering the circumstances arising in the twelve months after the approval of the October 1994 foster care plan because the emergency removal order authorizing the children's placement in foster care was subsequently dismissed by order of the J&DR court entered April 20, 1995.  Reid did not include this objection in her exceptions to the decree when it was entered.  Furthermore, Reid did not preserve this issue at the places in the record indicated by the appendix reference in her brief.  See Rule 5A:20(c).  Because Reid did not preserve this objection, we do not consider it. See Rule 5A:18.

## Sufficiency of the Evidence

Reid contends that the trial court erred in finding the evidence sufficient under Code § 16.1-283(C).  Under the version of Code § 16.1-283(C) applicable to this case, the parental rights of a parent of a child placed in foster care may be terminated if the trial court finds it is in the best interests of the child and that the parent, without good cause,

> [has] been unwilling or unable within a
> reasonable period not to exceed twelve
> months to remedy substantially the
> conditions which led to the child's foster
> care placement, notwithstanding the
> reasonable and appropriate efforts of
> social, medical, mental health or other
> rehabilitative agencies to such end.

Code § 16.1-283(C)(2).[1]  Proof that the parent, without good

cause, failed to "make reasonable progress towards the

elimination of the conditions which led to the child's foster

care placement in accordance with their obligations under . . .

a foster care plan" is prima facie evidence of the conditions

set out in Code § 16.1-283(C)(2).

The record demonstrates that DSS provided services to

assist Reid and her husband beginning in 1992.  Despite these

services, Reid failed to make substantial progress towards

improving her parenting skills, establishing a stable home life,

or becoming financially self-sufficient.  Her employment was

sporadic, in part due to periods of incarceration.  She briefly

participated in individual counseling with some regularity until

January 1995.  She refused to attend parenting classes.  When

Reid visited with the children, the visits were often marked by

little or negative interaction.  With some regularity, Reid

failed to appear for scheduled visitation, or reduced the time

allotted for visitation by arriving late or leaving early.  She

failed to respond to the attempts of Charles' therapist to

contact her.

Evidence from the mental health evaluators indicated that

Reid had limited insight into the needs of her children.  She

lacked the ability to place their needs above her own.  In a

---

[1] The statute was amended in 1998.

report dated September 1996, the evaluator, Victoria Lyle, reported that, "even after intensive in-home services and attempts to have her attend parenting classes, and address parenting issues in therapy, [Reid's] basic interactions with her children and her priorities have not changed." When Lyle attempted to meet with Reid in 1998 for further evaluation, Reid indicated she could not meet with Lyle. Lyle noted that

> [t]his type of response . . . to an issue of such obvious importance, has been a pattern of behavior during the past several years. This reflects, at best, continued poor life management skills, and poor judgment in prioritizing.

Reid contends that there were no standards by which she could measure her compliance. We find no merit in that contention. Over the years, Reid refused the assistance offered by various sources. While Reid testified that she had made substantial progress and now had resources to turn to for assistance, she admitted to recent thoughts of suicide. She also had no plans to parent the children immediately and indicated that she wanted merely to retain the ability to petition for custody in the future. Despite the years that the children had been in foster care, Reid testified at the termination hearing that she now was willing to learn to provide for their special needs, if she was given more time.

We find no error in the determination of the trial court that DSS presented clear and convincing evidence sufficient to meet the statutory requirements of Code § 16.1-283(C).

## Marital Discord

Reid contends that the trial court erred in considering the marital discord between her and her husband as a factor in the termination of her parental rights. Reid did not preserve this issue at the place in the record indicated by the appendix reference in her brief. See Rule 5A:20(c). We find no indication that Reid raised this argument before the trial court. We will not consider an argument raised for the first time on appeal. See Rule 5A:18.

## Limited Access to the Children

Reid contends that the trial court erred in considering her limited time and access to her children because DSS controlled her access. Reid did not preserve this issue in the trial court. We therefore do not consider this argument. See Rule 5A:18.

## Best Interests of the Children

Reid contends that the trial court erred by finding that termination of her parental rights was in the best interests of the children. Reid did not preserve this issue at the place in the record indicated by the appendix reference in her brief. See Rule 5A:20(c). The cited reference does not raise the issue

of the best interests of the children.  Therefore, we do not consider this issue.  <u>See</u> Rule 5A:18.

### J&DR Court Record

Finally, Reid contends that the trial court erred by relying on the files of the J&DR court that were not tendered for entry into evidence.  This argument is without merit.  Reid did not object at the time the trial court indicated it would consider the J&DR file.  The Court of Appeals will not consider a claim of trial court error as a ground for reversal "where no timely objection was made, except to attain the ends of justice."  <u>Marshall v. Commonwealth</u>, 26 Va. App. 627, 636, 496 S.E.2d 120, 125 (1998) (citing Rule 5A:18).  "To be timely, an objection must be made when the occasion arises--at the time the evidence is offered or the statement made."  <u>Marlowe v. Commonwealth</u>, 2 Va. App. 619, 621, 347 S.E.2d 167, 168 (1986).  While Reid noted an exception to the final order based upon this objection, she did not object at trial when the trial court indicated it would review the files.  Moreover, the Supreme Court of Virginia previously ruled that foster care plans introduced into the record before a J&DR court do not need to be refiled upon an appeal to a circuit court.  <u>See</u> <u>Todaro v. Alexandria Dep't of Soc. Servs.</u>, 226 Va. 307, 309 S.E.2d 303 (1983).  Therefore, we do not consider this issue.

The evidence supports the conclusion of the trial court that DSS presented clear and convincing evidence sufficient to

meet the statutory requirements of Code § 16.1-283(C), prior to the 1998 amendments, and that termination was in the best interests of these children.  Since their placement in foster care in 1994, the children have gained a sense of stability and emotional well-being.  Despite the availability of services, Reid failed over an extended period of years to take the steps necessary to meet the needs of her children.  "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming . . . responsibilities."  Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Accordingly, the decision of the circuit court is summarily affirmed.

Affirmed.