COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Bray and Humphreys
Argued at Richmond, Virginia


PATRICK NOEL CREED

                                MEMORANDUM OPINION[*] BY
v.    Record No. 0593-01-2      JUDGE RICHARD S. BRAY
                                     JUNE 18, 2002
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                      William R. Shelton, Judge

           Ernest P. Gates, Jr. (Gates & Alexander,
           P.C., on brief), for appellant.

           Leah A. Darron, Assistant Attorney General
           (Jerry W. Kilgore, Attorney General, on
           brief), for appellee.


     Patrick Noel Creed (defendant) was convicted in a bench trial

of two counts of aggravated sexual battery of a minor, violations

of Code § 18.2-67.3.  On appeal, he challenges the sufficiency of

the evidence to support the convictions.  Finding no error, we

affirm the trial court.

     The parties are fully conversant with the record, and this

memorandum opinion recites only those facts necessary to a

disposition of the appeal.

---

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

I.

In reviewing the sufficiency of the evidence, we consider the record, "in the light most favorable to the Commonwealth, giving it all reasonable inferences fairly deducible therefrom." Watkins v. Commonwealth, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998) (citation omitted). The credibility of the witnesses, the weight accorded testimony, and the inferences drawn from proven facts are matters to be determined by the fact finder. Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989). The judgment of the trial court will not be disturbed unless plainly wrong or unsupported by the evidence. See Code § 8.01-680.

Viewed accordingly, the instant record discloses that, during the summer of 1998, C.B., age nine, was enrolled in a karate class together with "about ten" other students, including her sister, stepfather and defendant, a family "friend." "[O]nce or twice each week," when "everyone would leave [class] to take . . . a bathroom or a water break," C.B. and defendant "would start . . . wrestling, but . . . it would turn into not wrestling" when defendant "touched [her] places that [she] really didn't like him to touch." C.B. described such "places" as "[w]here a bikini bathing suit would cover up" and recalled defendant "would . . . sort of grab them or rub them." When C.B. asked defendant "to stop," "he just got this little flare in his eye" and "kept on."

-

"About the second time [defendant] did it," C.B. stopped attending the karate classes.

Defendant subsequently visited C.B.'s home and "told [her] that if [she] came back to [karate], he would stop."  However, while C.B. and defendant were "in [her] sister's bedroom," defendant again touched her in "[t]he same place where the bikini would cover."  When C.B. "tr[ied] to squirm away," defendant "just got that glare in his eye" and "kept going."  Asked by the prosecutor, "Can you show the Court by touching your part of the body where he touched you," C.B. indicated, "Right here and right here."

A.T., age twelve, testified that, on March 18, 1999, following "a chorus concert" at a local school, she and a friend were "walking around the school," when defendant, "dressed up in a karate suit," "approached."  The three began "playing around like [they] were karate people," "kind of acting."  However, after "10 minutes, 20 minutes," defendant "picked [A.T.] up," "lifted [her] up like a baby," "started feeling [her] chest," and "took" her, "screaming," "kicking," and "squirming," "into the boys' bathroom."  Once inside, defendant "touch[ed]" the child's "back area" and "chest," "outside of [her] shirt."  When a teacher appeared on the scene and directed the "girls . . . out of there," defendant "dropped" A.T. and "went into one of the stalls."  A.T. reported the incident to the police the following morning.

-

At the conclusion of the Commonwealth's case-in-chief, defendant moved the court to strike the evidence, arguing that, while the "girls testified that they believe there was some inappropriate touching," "there was never any words said regarding trying to arouse or gratify." Defendant reasoned such conduct "may be indecent liberties or an assault-type of situation" but not "aggravated sexual battery." The court, however, disagreed and overruled the motion.

Defendant, a convicted felon, testified he would see C.B. "twice a week" at karate class and, occasionally, ate dinner at her home, either before or after class. He acknowledged "wrestling" with C.B., explaining "[i]n a lot of karate, you grab the person and wrap the other person up with you," but denied "intentionally tr[ying] to touch [her] body."

Addressing the testimony of A.T., defendant recalled an encounter with her at Manchester Middle School, "where the [karate] school is held," on March 18, 1999. He claimed A.T. approached him, "asked [him] about karate" and they "started doing a bunch of moves," "horsing around." Defendant admitted he "picked [A.T.] up, slung her around, and put her in a trash can" but insisted "that was it," denying the alleged misconduct.

At the conclusion of all the evidence, defendant renewed his motion to strike, arguing, "even without [defendant's] testimony that it didn't occur . . . it certainly was not intentional," and "[t]he Commonwealth has not proved the underlying sexual abuse."

-

Defendant again characterized the alleged touching, as "indecent liberties . . . or sexual battery," not aggravated sexual battery. The court overruled the motion and convicted defendant of the instant offenses, resulting in the instant appeal.

II.

Code § 18.2-67.3 provides, in pertinent part: "An accused shall be guilty of aggravated sexual battery if he or she sexually abuses the complaining witness, and . . . [t]he complaining witness is less than thirteen years of age . . . ." To prove the offense, the Commonwealth must establish that the offender "intentionally touche[d] the complaining witness's intimate parts or clothing covering such intimate parts[,]" "with the intent to sexually molest, arouse, or gratify." Code § 18.2-67.10(6). "'Intimate parts' means the genitalia, anus, groin, breast, or buttocks of any person." Code § 18.2-67.10(2).

A.

On appeal, defendant first contends C.B.'s description of "[w]here a bikini bathing suit would cover up" and A.T.'s references to her "back area" and "chest" were insufficient to prove a touching of the "genitalia, anus, groin, breast, or buttocks" contemplated by Code §§ 18.2-67.3 and -67.10(2), arguments defendant did not present to the trial court.

Rule 5A:18 provides, in pertinent part, that "[n]o ruling of the trial court . . . will be considered as a basis for

-

reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice."  Rule 5A:18.  In furtherance of the Rule, we have oftentimes instructed:

> Where an appellant makes a general objection to the sufficiency of the evidence that "[does] not specify in what respects [appellant] considered the evidence to be insufficient to prove [the charged offense,] . . . the issue of whether the evidence was insufficient to prove a particular [unmentioned] element of the offense [is] not properly preserved."

Marshall v. Commonwealth, 26 Va. App. 627, 636, 496 S.E.2d 120, 124 (1998) (quoting Redman v. Commonwealth, 25 Va. App. 215, 220, 487 S.E.2d 269, 272 (1997)).

Although defendant twice moved the court to strike the Commonwealth's evidence, he failed on each occasion to specifically challenge the sufficiency of the evidence to establish the proscribed touching.  Defendant, therefore, is precluded from raising the issue for the first time on appeal to this Court.  Accordingly, finding no justification to apply the "ends of justice" exception, we decline to consider the arguments.  See Redman, 25 Va. App. at 221-22, 487 S.E.2d at 272-73.

-

B.

Defendant next contends the evidence failed to establish he touched C.B. and A.T with the requisite intent, an argument belied by the evidence.

C.B. testified that, during karate classes, when "everyone would leave to take . . . a bathroom break or a water break," defendant touched intimate parts of her body, despite her protests.  When she stopped attending classes, he promised "if [she] came back to class, he would stop," but repeated the misconduct at her home, again ignoring the child's objections.

Similarly, A.T. testified defendant "touch[ed]" the intimate parts of her body, forced her, "screaming" and resisting, into a men's bathroom and continued the assault, stopping only when a teacher appeared, then hiding himself in a "stall."

"'Intent is the purpose formed in a person's mind which may, and often must, be inferred from the facts and circumstances in a particular case.  The state of mind of an alleged offender may be shown by his acts and conduct.'"  Walker v. Commonwealth, 12 Va. App. 438, 445, 404 S.E.2d 394, 397 (1991) (citation omitted).  Here, defendant acted deliberately, with singular purpose and persistence, in repeated sexual assaults upon the two children, conduct under circumstances that clearly evinced the requisite intent to "sexually molest, arouse, or gratify" in violation of Code § 18.2-67.3.

-

C.

Finally, defendant characterizes C.B.'s testimony as incredible, relying upon inconsistencies with her sister's testimony.

> In testing the credibility and weight to be ascribed to the evidence, we must give trial courts and juries the wide discretion to which a living record, as distinguished from a printed record, logically entitles them. The living record contains many guideposts to the truth which are not in the printed record; not having seen them ourselves, we should give great weight to the conclusions of those who have seen and heard them.

Lockhart v. Commonwealth, 34 Va. App. 329, 342, 542 S.E.2d 1, 7 (2001) (citations omitted); see Love v. Commonwealth, 18 Va. App. 84, 90, 441 S.E.2d 709, 713 (1994) ("[C]hild's testimony alone, if believed by the [fact finder], [is] sufficient to support [the instant] conviction[s], even in the absence of corroborating physical or testimonial evidence." (citations omitted)).

The trial court, as fact finder, assessed C.B.'s credibility, including her inconsistent testimony, accepted her evidence and convicted defendant. Our review of the record does not support a finding that the court was plainly wrong.

Accordingly, we affirm the convictions.

                                        Affirmed.

-