COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, O'Brien and Senior Judge Bumgardner

UNPUBLISHED

KATHY FITZGERALD HARWOOD

MEMORANDUM OPINION[*]

v.      Record No. 1732-15-2      PER CURIAM
JULY 19, 2016

BUCKINGHAM COUNTY DEPARTMENT
  OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF BUCKINGHAM COUNTY
Kimberley S. White, Judge

(Roger B. Stough, on brief), for appellant.

(E. M. Wright, Jr.; Eric A. Tinnell, Guardian *ad litem* for the minor
child, on brief), for appellee.


Kathy F. Harwood (mother) appeals the order terminating her parental rights to her child.

Mother presents the following assignments of error:[1]

> I. The trial Court erred in finding by clear and convincing evidence
> that it was in the best interest of the minor child to terminate Kathy
> F. Harwood's parental rights.
>
> II. The trial Court erred in finding that the Buckingham County
> Department of Social Services met its obligations under the plan.
>
> III. The trial Court erred in finding that the Buckingham County
> Department of Social Services provided services to Kathy F.
> Harwood.
>
> IV. The trial Court erred in finding that the Buckingham County
> Department of Social Services provided services to Kathy F.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Mother's opening brief also includes nine questions presented. Effective July 1, 2010, Rule 5A:20(c) was revised to state that an appellant's opening brief shall contain a "statement of the assignments of error with a clear and exact reference to the page(s) of the transcript, written statement, record, or appendix where each assignment of error was preserved in the trial court." Pursuant to the revised rules, this Court considers only assignments of error and, as such, will not consider the additional issues listed as questions presented.

Harwood designed to rehabilitate the mother based on the specific reasons the child came into care.

V. The trial Court erred in finding that the Buckingham County Department of Social Services provided adequate accommodations to meet Kathy F. Harwood's disabilities under the Americans with Disabilities Act.

VI. The trial Court erred in terminating the residual parental rights of Kathy F. Harwood pursuant to Virginia Code Section 16.1-283(B)(1).

VII. The trial Court erred in terminating the residual parental rights of Kathy F. Harwood pursuant to Virginia Code Section 16.1-283(B)(2)(c).

VIII. The trial Court erred in terminating the residual parental rights of Kathy F. Harwood pursuant to Virginia Code Section 16.1-283(C)(2).

IX. The trial Court erred in finding that the mother of the minor child had subjected the child to aggravating circumstances.

Upon reviewing the record and briefs of the parties, we conclude that this appeal is without merit. Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

Mother has one child who was born in September 1998. On October 10, 2013, the Department received a child protective services complaint. There was concern about the child's health because he was severely underweight, had stunted growth, and had rotten teeth. Mother was reluctant to provide information to the social worker, but did state that the child was highly allergic to many foods. Mother also indicated that she and the child had chemical sensitivities,

so she limited people's access to their home and rarely visited public places, including doctor's offices.

After investigating the child protective services complaint, the Department obtained a preliminary protective order. Mother was ordered to provide the Department with the child's medical information and have the child evaluated. Mother did not comply until the juvenile and domestic relations district court (JDR court) ordered her to take the child to the Medical College of Virginia (MCV) to be evaluated by Dr. Robin Foster. The JDR court also ordered that a representative from the Department was to accompany mother and the child at MCV.

On October 25, 2013, mother took the child to MCV, where he was evaluated. The child had to be admitted because he had low albumin levels and low thyroid levels. He was severely malnourished and had severe hypothyroidism. The medical staff indicated that the child's conditions were indicative of neglect by mother. Mother objected to the child being admitted at that time. She was vague and defensive in her responses to the medical staff.

In order to avoid interference from mother regarding the child's necessary treatment, the medical staff requested that the Department obtain custody of the child, which it did. On October 29, 2013, the JDR court entered an emergency removal order. After a hearing in November 2013, the JDR court entered an adjudicatory order for abuse and neglect. On February 24, 2014, the JDR court entered a dispositional order regarding foster care, which mother appealed to the circuit court. The JDR court also entered an order approving a foster care review plan, which mother appealed to the circuit court. The appeals were consolidated.

On January 30 and 31, 2015, the circuit court heard evidence and argument. The Department presented evidence that the child weighed eighteen pounds and six ounces when he was two and one-half years old. The following year, he weighed twenty pounds and six and one-half ounces. He weighed twenty-five pounds when he was eight years old. When he was

admitted to MCV in October 2013, he was fifteen years old and weighed approximately thirty-three pounds.

Evidence was presented that mother submitted to a psychological examination and a parental capacity assessment, conducted by Dr. A.J. Anderson. Dr. Anderson stated that "the testing indicates depression, a degree of preoccupation with physical health and bodily functions, and impaired contact with reality, all of which are likely to interfere with effective parenting." Dr. Anderson concluded, "It does not appear likely that any kind or amount of services is likely to improve substantially Ms. Harwood's level of functioning or her ability to parent."

Despite court orders and requirements in the Department's service plan, mother did not submit to a medical evaluation. Mother also did not participate in nutrition education training/classes which were deemed appropriate for her child's needs.

The Department also presented evidence that the child was improving in foster care. The doctors could not identify any food allergies or chemical sensitivities from which the child suffered.

At the conclusion of the January 31, 2015 hearing, the circuit court approved the original foster care plan, dated January 24, 2014, that was approved by the JDR dispositional order, but disapproved the subsequent foster care plan dated July 11, 2014. The circuit court explained that the January 24, 2014 foster care plan had a goal of return home, which was reasonable at the time. The July 11, 2014 foster care plan also had a goal of return home, but mother still had not complied with the Department's requirements. The circuit court found that the goal of return home was no longer reasonable, so the circuit court ordered the Department to file a new plan. The circuit court entered orders reflecting its rulings on February 10, 2015. Mother appealed the dispositional order to this Court.

On March 25 and April 29, 2015, the circuit court heard additional evidence regarding the new foster care review plan submitted by the Department. The foster care review plan had a goal of adoption. The circuit court approved the new plan and entered an order on May 28, 2015. Mother appealed the approval of the foster care plan to this Court.

On December 15, 2015, this Court summarily affirmed the trial court's dispositional order and approval of the foster care plan. Harwood v. Buckingham Cty. Dep't of Soc. Servs., Nos. 0414-15-2 and 0852-15-2, 2015 Va. App. LEXIS 378 (Va. Ct. App. Dec. 15, 2015).[2]

While the appeals were pending, the Department filed a petition to terminate mother's parental rights. On July 28, 2015, the JDR court entered an order terminating mother's parental rights. Mother appealed to the circuit court.

On August 27 and 28, 2015, the parties presented evidence and argument in the circuit court. Dr. Foster, the doctor who treated the child at MCV in 2013, testified that the severity of the child's hypothyroidism was "life-threatening." Dr. Foster explained that there were long-term consequences to the child's health that were not reversible.

Dr. Santhosh Kumar, designated an expert in allergy immunology, tested the child and determined that he had no food allergies, contrary to mother's assertions.

Dr. Donna Purcell, a licensed clinical psychologist, testified that she recommended that the visits between the child and mother be reduced or eliminated in December 2014 because the child was experiencing too much anxiety.

Dr. Satish Mahajan, designated an expert in pediatrics with an emphasis on nutrition, testified that when he first met the child, the child was severely malnourished. Dr. Mahajan explained that the child could not feed himself, drink from a cup, or suck on a straw, and did not

_____

[2] Mother subsequently appealed the matters to the Supreme Court of Virginia, which dismissed the petition for appeal for lack of jurisdiction. Harwood v. Buckingham Cty. Dep't of Soc. Servs., Record No. 160088 (Va. May 19, 2016).

know how to chew. However, after working with him, Dr. Mahajan said that the child is improving and learning new skills.

The Department tried to work with mother throughout the time that the child was in foster care, but mother was not cooperative. Meanwhile, the child has been making significant improvements in foster care.

On September 22, 2015, the circuit court entered an order terminating mother's parental rights pursuant to Code § 16.1-283(B) and (C)(2). The Department filed a motion to reconsider and asked the trial court to also terminate mother's parental rights pursuant to Code § 16.1-283(E)(iv). The parties appeared before the circuit court on September 28, 2015. On October 2, 2015, the circuit court entered an order vacating the September 22, 2015 order and terminating mother's parental rights pursuant to Code § 16.1-283(B), (C)(2), and (E)(iv). This appeal followed.

## ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citation omitted). When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

*Assignments of error #1, 6, and 7*

Mother argues that the trial court erred in terminating her parental rights pursuant to Code § 16.1-283(B) and finding that termination of her parental rights was in the best interests of the child.

Code § 16.1-283(B) states a parent's parental rights may be terminated if:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and

> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

"[S]ubsection B [of Code § 16.1-283] 'speaks prospectively' and requires the circuit court to make a judgment call on the parent's ability, following a finding of neglect or abuse, to substantially remedy the underlying problems." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 270-71, 616 S.E.2d 765, 772 (2005) (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)).

Contrary to mother's arguments, the evidence supports the trial court's finding. On December 3, 2013, the JDR court entered an order reflecting its finding that the child was abused and neglected. During the trial regarding the termination of parental rights, Dr. Foster testified about the condition of the child when he was admitted to MCV Hospital. Dr. Foster stated, "His condition was critical in that his severity of hypothyroidism was life-threatening. So he had failure to thrive, severe hypothyroidism, low vitamin D levels, low protein stores, lack of medical care, and a diet that was inadequate to serve the needs that he had to sustain his life." Dr. Foster further explained,

> So unfortunately there is certainly going to be some long-term upsets of this protracted period of time of which he was offered inadequate nutrition. But the problem, I think, in his care in the first 15 years of life was that there was no rational basis for the choices that were made about his health and nutrition and that that in and of itself then constitutes medical and nutritional neglect and have ultimately affected [the child's] long-term outcome in terms of health and well-being.

Lastly, Dr. Foster opined that the child's "total long-term height will be lower than if he had been offered adequate nutrition throughout his life" and "his severe hypothyroidism long-term will have affected what his ultimate cognitive potential is."

The trial court found Dr. Foster's testimony to be credible and relied on her testimony, as well as the child's medical records and the Department's other witnesses, when deciding the case. "It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*) (citation omitted).

The trial court further found that although mother loved the child, she did not address the issues concerning the child's health and nutritional needs. Mother made "no significant efforts" to complete the services offered by the Department.

"[P]ast actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold." Linkous v. Kingery, 10 Va. App. 45, 56, 390 S.E.2d 188, 194 (1990) (quoting Frye v. Spotte, 4 Va. App. 530, 536, 359 S.E.2d 315, 319 (1987)).

There was no evidence that mother substantially remedied the situation that led to the child being placed in foster care. In fact, the trial court noted that mother still did not understand why the child was in a life-threatening condition when he was admitted to MCV.

While the child was in foster care, he made significant improvements. He gained weight and grew taller. He was working with therapists at the feeding clinic and was learning new skills. He started attending school and interacting with others.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities."

Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Considering the totality of the circumstances, the trial court did not err in determining that it was in the child's best interests to terminate mother's parental rights pursuant to Code § 16.1-283(B).

*Assignments of error #2-4*

Mother argues that the Department failed to provide services for her and to include her in the drafting of the foster care plans. She contends the Department did not start trying to provide services to mother until July 2014, which was five months after the initial foster care plan was approved. Mother states that she was not included in the child's appointments at the feeding clinic and was not provided any services related to the child's dental issues.

The record includes numerous examples of services offered to mother, but she failed to follow through with them. For example, the Department arranged for mother to participate in a psychological evaluation, which she did, but she later contested the results. The psychologist recommended numerous services, including a psychiatric evaluation. The Department scheduled two appointments for mother, but she did not appear at either appointment. Mother did not submit to a medical evaluation with a provider approved by the Department, nor did she appear for an appointment with a doctor to evaluate her for allergies. The Department scheduled three appointments with the child's therapist to discuss his nutritional needs, but mother did not attend. The Department gave mother information regarding parenting classes, but mother never presented evidence that she attended the classes. The social worker testified that mother made little progress and did not keep the appointments scheduled by the Department.

"The Department is not required 'to force its services upon an unwilling or disinterested parent.'" Logan, 13 Va. App. at 130, 409 S.E.2d at 463-64 (quoting Barkey v. Commonwealth, 2 Va. App. 662, 670, 347 S.E.2d 188, 192 (1986)).

Contrary to mother's assertions, the Department provided numerous services to her, but she did not participate in them.

Once the goal of the foster care plan was changed to adoption, the Department no longer had a duty to provide services to her. See Akers v. Fauquier Cty. Dep't of Soc. Servs., 44 Va. App. 247, 604 S.E.2d 737 (2004).

*Assignment of error #5*

Mother argues that the "trial court erred in finding that the Buckingham County Department of Social Services provided adequate accommodations to meet Kathy F. Harwood's disabilities under the Americans with Disabilities Act." Mother contends that under the Americans with Disabilities Act (ADA), she is an individual with a disability, and the Department was required to make reasonable accommodations to her.

Although mother noted her objection on the October 22, 2015 order, she did not argue that the ADA applied and was violated during the trial, nor did she specify what accommodations should have been granted that were not made for her. Mother's objection was not timely.

The Court of Appeals will not consider a claim of trial court error as a ground for reversal "where no timely objection was made, except to attain the ends of justice." Marshall v. Commonwealth, 26 Va. App. 627, 636, 496 S.E.2d 120, 125 (1998) (citing Rule 5A:18). "To be timely, an objection must be made when the occasion arises – at the time the evidence is offered

- 10 -

or the statement made." <u>Marlowe v. Commonwealth</u>, 2 Va. App. 619, 621, 347 S.E.2d 167, 168 (1986).

Consequently, the Court will not consider this assignment of error.

*Assignments of error #8-9*

When a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court, and if so, we need not address the other grounds. <u>See</u> <u>Fields v. Dinwiddie Cty. Dep't of Soc. Servs.</u>, 46 Va. App. 1, 8, 614 S.E.2d 656, 659 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). Therefore, we will not consider whether the trial court erred in terminating mother's parental rights pursuant to Code § 16.1-283(C)(2) and (E)(iv).

CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed. Rule 5A:27.

<u>Affirmed.</u>