COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judges Benton and Clements
Argued by teleconference

CHARLES ALLEN BREEDEN

v.        Record No. 2272-02-4

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE JEAN HARRISON CLEMENTS
JUNE 1, 2004

FROM THE CIRCUIT COURT OF PAGE COUNTY
John J. McGrath, Jr., Judge

Felipita Athanas, Appellate Counsel (Public Defender Commission,
on briefs), for appellant.

(Jerry W. Kilgore, Attorney General; Jennifer R. Franklin, Assistant
Attorney General, on brief), for appellee.


Charles Allen Breeden was convicted in a bench trial of several offenses, among them rape,

in violation of Code § 18.2-61; use of a firearm in the commission of a felony, in violation of Code

§ 18.2-53.1; statutory burglary, in violation of Code § 18.2-91; and possession of marijuana, in

violation of Code § 18.2-250.1.  On appeal, Breeden contends the trial court erred in finding the

evidence sufficient to support each of these convictions and in admitting evidence of the

complaining witness' recent complaints of rape under Code § 19.2-268.2.  For the reasons that

follow, we affirm Breeden's convictions.

I.  BACKGROUND

Familiar appellate principles dictate that "we view the evidence and all reasonable

inferences fairly deducible from that evidence in the light most favorable to the Commonwealth,

the party that prevailed below."  Banks v. Commonwealth, 41 Va. App. 539, 543, 586 S.E.2d

876, 877 (2003).  So viewed, the evidence established that Breeden and the complaining witness

dated for some time prior to March 20, 2001. He stayed overnight in her house on several occasions and left some of his belongings at her house. Approximately two weeks before March 20, 2001, the complaining witness told Breeden she did not want him staying at her home and returned some of his belongings to his residence.

On March 20, 2001, the complaining witness left her house at 7:30 p.m. She locked her house when she left. While she was out, Breeden broke into her house through a back window and waited for her to return. When she returned at 11:30 p.m., Breeden "jumped out from behind the door" with a pistol in his hand.

Holding the gun, Breeden demanded that she tell him where she had been that night. She responded, "What do you mean, where have I been? What are you doing?" He grabbed her face between his hands, repeated his question, pushed her to the couch, and told her to sit down. Leaning over her, he told her this "was going to be the night that he ended it" and "he didn't have anything to live for." Putting the gun under his chin, Breeden threatened to "blow his head off." He then told her he wanted to "make love to her one last time before [he] end[ed] it." When she told him "no," Breeden hit her in the face with his hand, causing her nose to bleed "profusely." As she tried to stop the bleeding, Breeden lifted the front of her sweater, wiped her nose with it, and told her to go upstairs and wash her face. When she refused to go upstairs, Breeden, who had the pistol in one hand and a 12-gauge shotgun in the other, "kicked her in the butt."

When they got upstairs, Breeden pointed the pistol at himself, again threatened to kill himself, and told her he was going to have intercourse with her. She said "no," telling him she did not "feel like making love, not with somebody that's busted me in the nose." After placing the pistol on a shelf above the bed, Breeden "went ahead and had sex [with her] anyway." The complaining witness testified on cross-examination that Breeden did not threaten, force, or

intimidate her to have sex. Rather, she "was afraid he was going to kill himself." When he finished having sexual intercourse, Breeden picked up the gun and kept it with him in bed throughout the night. The complaining witness testified she was "frightened," "scared," and "terrified" throughout the night and was able to sleep only "a little bit." She also testified she did not leave the house because she feared he would kill himself.

In the morning, she effectuated her "plan to get away from" Breeden and told him she was going to work. She agreed to give him a ride to his residence but, when he went back into the house to get his shoes, she left without him.

The complaining witness drove to a friend's house. Her friend immediately observed that she "had been hurt," noting one of her eyes was swollen, her nose appeared to be broken, and she was "really shaky" and crying. Over Breeden's objection, the friend testified that the complaining witness told her Breeden had "raped" her and "forced [her] to have sex with him." The friend drove the complaining witness to the sheriff's office. From there, she was taken to the hospital.

Around 8:30 a.m., Page County Investigator Rebecca Hilliards recorded a detailed statement from the complaining witness concerning the previous night's events. The entire thirty-nine-page transcript of the statement was admitted into evidence, over Breeden's objection. When asked during that interview if Breeden threatened her before having sexual intercourse with her, the complaining witness said Breeden "held the gun up under his chin" and told her she would have a "bigger mess" than she already had from when he hit her in the face before. He told her "he was going to make love to her." She told him "no" and he said he was going to anyway, "[o]ne last time." He then had sexual intercourse with her.

During an interview the next day with Page County Investigator Carl S. Cook and other investigators, Breeden admitted to possessing some marijuana that was found in his home. He

- 3 -

confirmed that admission at trial, explaining that someone had given it to him, but he "hadn't used it yet."

Testifying on his own behalf at trial, Breeden denied he raped the complaining witness. He explained that, because she told him she did not want to "make love" with him after he hit her in the nose, he "had sex" with her instead. "Having sex," he further explained, "is just being with somebody, . . . like screwing them. And making love is different."

The trial court convicted Breeden of, among other crimes, rape, in violation of Code § 18.2-61; use of a firearm in the commission of a felony, in violation of Code § 18.2-53.1; statutory burglary, in violation of Code § 18.2-91; and possession of marijuana, in violation of Code § 18.2-250.1. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

### A. Standard of Review

When the sufficiency of the evidence is challenged on appeal, we review the evidence "in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." Bright v. Commonwealth, 4 Va. App. 248, 250, 356 S.E.2d 443, 444 (1987). "'In so doing, we must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'" Watkins v. Commonwealth, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998) (quoting Cirios v. Commonwealth, 7 Va. App. 292, 295, 373 S.E.2d 164, 165 (1988)). We are further mindful that the "credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination." Crawley v. Commonwealth, 29 Va. App. 372, 375, 512 S.E.2d 169, 170 (1999). "Circumstantial evidence is as competent and is entitled to as much weight as

- 4 -

direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis

except that of guilt." Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983).

B.  Rape

Breeden contends on appeal that the evidence was insufficient to convict him of rape

because the Commonwealth did not prove the use of force, threat, or intimidation required under

Code § 18.2-61.  In support of this claim, he points to the complaining witness' explicit

testimony that Breeden did not force, threaten, or intimidate her to have sex.

Code § 18.2-61 reads, in pertinent part, as follows:

> If any person has sexual intercourse with a complaining
> witness who is not his or her spouse or causes a complaining
> witness, whether or not his or her spouse, to engage in sexual
> intercourse with any other person and such act is accomplished . . .
> against the complaining witness's will, by force, threat or
> intimidation of or against the complaining witness *or another*
> *person*, . . . he or she shall be guilty of rape.

(Emphasis added.)

In order to prove force sufficient to support a rape conviction, "[t]he force must be used

to overcome the victim's will.  'There must be evidence of "some array or show of force in form

sufficient to overcome resistance."'" Sabol v. Commonwealth, 37 Va. App. 9, 16-17, 553 S.E.2d

533, 536-37 (2001) (citation omitted) (quoting Jones v. Commonwealth, 219 Va. 983, 986, 252

S.E.2d 370, 372 (1979) (quoting Davis v. Commonwealth, 186 Va. 936, 946, 45 S.E.2d 167, 171

(1947))).

> As used in the statute, threat means expression of an intention to
> do bodily harm.  Intimidation may occur without threats.
> Intimidation, as used in the statute, means putting a victim in fear
> of bodily harm by exercising such domination and control of her as
> to overcome her mind and overbear her will.  Intimidation may be
> caused by the imposition of psychological pressure on one who,
> under the circumstances, is vulnerable and susceptible to such
> pressure.

Sutton v. Commonwealth, 228 Va. 654, 663, 324 S.E.2d 665, 670 (1985). "This fear of bodily harm must derive from some conduct or statement of the accused." Sabol, 37 Va. App. at 18, 553 S.E.2d at 537. Moreover, it is clear from the inclusion in Code § 18.2-61 of the language "or another person" that the threat used by a person to get the complaining witness to have sex with him may be a threat against someone other than the complaining witness. Whether the accused used force, threat, or intimidation "to overcome the victim's will is a factual question, and this Court defers to the fact finder's decision unless plainly wrong." Id. at 17, 553 S.E.2d at 537.

In this case, the evidence amply supports a finding that Breeden used a combination of threats and force to intimidate the complaining witness and overcome her will.[1] When she returned to her house at night, Breeden was there with a gun and held it the entire time. He used physical force against her, including pushing her, hitting her face, and kicking her buttocks, and repeatedly threatened to kill himself. He told her he wanted to "make love to her one last time before [he] end[ed] it."

Breeden's words and conduct were clearly intended to put the complaining witness "in fear of bodily harm by exercising such domination and control of her as to overcome her mind and overbear her." Sutton, 228 Va. at 663, 324 S.E.2d at 670. In pushing, hitting, and kicking her, he manifested his physical control over her and created the implicit threat that he would use more force and violence if she did not comply with his wishes. In threatening to kill himself, holding the gun up to his chin, and continually holding a gun in his hand or keeping one near him throughout the night, he created the additional implicit threat that he would kill "another person," namely, himself, if she did not do what he wanted. After making these threats and using

_____

[1] It is undisputed that, before the sexual encounter with Breeden, the complaining witness explicitly refused consent to his sexual advances. Indeed, Breeden conceded at trial that she said "no" when he told her he was going to make love to her.

violence, Breeden engaged in sexual intercourse with the complaining witness against her expressed will.

In view of these events, the fact finder could give little weight to the complaining witness' testimony that Breeden did not threaten, force, or intimidate her to have sexual intercourse with him because her testimony in its entirety established that she had sex with him because she "was afraid he was going to kill himself" and the evidence proved that she told her friend the following morning that Breeden had "raped" her and "forced [her] to have sex with him." In a case where the evidence offered by a complaining witness is "internally inconsistent," the finder of fact has "the discretion to ignore" that portion of the witness' testimony that is contrary to the portion believed to be true. Seaton v. Commonwealth, 42 Va. App. 739, 751, 595 S.E.2d 9, ___ (2004); see also Barrett v. Commonwealth, 231 Va. 102, 107, 341 S.E.2d 190, 193 (1986) (recognizing that the finder of fact has "the right to reject that part of the evidence believed . . . to be untrue and to accept that found . . . to be true"); Montague v. Commonwealth, 40 Va. App. 430, 436, 579 S.E.2d 667, 669 (2003) (noting that a fact finder need not decide between rejecting or accepting a witness' testimony in full, but may find it credible in part and incredible in part).

From this evidence, the trial court, as fact finder, could reasonably conclude that Breeden imposed such physical and psychological pressure on her that, despite her unwillingness to do so, she engaged in sexual intercourse with him anyway. For these reasons, we conclude the evidence was sufficient to prove beyond a reasonable doubt the elements of rape.

### C. Use or Display of a Firearm in the Commission of a Felony

Breeden further contends the evidence was insufficient to convict him of the use or display of a firearm in the commission of a felony because the Commonwealth failed to prove he used or displayed a firearm to accomplish the rape. We disagree.

In order to support Breeden's conviction under Code § 18.2-53.1, the Commonwealth had to prove Breeden "actually had a firearm in his possession and that he used or attempted to use the firearm or displayed the firearm in a threatening manner while committing or attempting to commit [rape]." Yarborough v. Commonwealth, 247 Va. 215, 218, 441 S.E.2d 342, 344 (1994).

As noted above, the record reveals that Breeden was holding the gun the entire time. Putting the gun under his chin, Breeden told the complaining witness he was going to "blow his head off." He then told her he wanted to "make love to her one last time before [he] end[ed] it." After she refused, he picked up a shotgun in his free hand and told her to go upstairs. While holding the shotgun and pistol, he kicked her, forcing her to climb the stairs to the bedroom. At least two more times, Breeden pointed the pistol at himself and threatened to kill himself. "[A]fraid he was going to kill himself," the complaining witness engaged in sexual intercourse with him against her will. He put the pistol on a shelf above the bed within his reach while he raped her. Later, he retrieved the pistol.

Based on this evidence, the trial court could properly conclude that Breeden "actually had a firearm in his possession and that he used or attempted to use the firearm or displayed the firearm in a threatening manner while committing" the rape. Id. Accordingly, the evidence was sufficient to prove beyond a reasonable doubt that Breeden used a firearm during the commission of the rape.

### D. Statutory Burglary

Breeden concedes on appeal that the evidence established he broke into and entered the complaining witness' house. He contends, however, that the evidence was insufficient to support his conviction for statutory burglary under Code § 18.2-91 because the Commonwealth failed to

prove he entered the house with the requisite intent to commit larceny or any other felony or assault and battery. We disagree.

A conviction for statutory burglary is supported by evidence of a breaking and entering "with intent to commit assault and battery." Code § 18.2-91. "In a prosecution for statutory burglary under Code § 18.2-91, proof that the accused unlawfully entered another's dwelling supports an inference that the entry was made for an unlawful purpose. The specific intent with which the unlawful entry is made may be inferred from the surrounding facts and circumstances." Robertson v. Commonwealth, 31 Va. App. 814, 822, 525 S.E.2d 640, 644 (2000) (citation omitted).

Here, the evidence, viewed in the light most favorable to the Commonwealth, proved that Breeden broke into the locked house through a back window. When the complaining witness later arrived, Breeden stepped from behind the front door with a pistol in his hand, demanding to know where she had been. He then grabbed her face, pushed her to the couch, and hit her in the nose.

The trial court, as fact finder, could reasonably infer from this evidence that Breeden had the intent to assault and batter the complaining witness when he broke into and entered her house that night. His unlawful entry into the residence supports the inference that he entered with an unlawful purpose, and the surrounding circumstances support an inference that he entered with an intent to assault and batter. We conclude, therefore, that the evidence was sufficient to prove beyond a reasonable doubt the elements of the offense.

### E. Possession of Marijuana

Breeden also challenges the sufficiency of the evidence to sustain his conviction for marijuana possession. He concedes, however, that the issue was not preserved at trial as required

by Rule 5A:18, but contends "the ends of justice require this court to review this issue for the first time on appeal." We disagree.

Pursuant to Rule 5A:18, "[t]he Court of Appeals will not consider an argument on appeal [that] was not presented to the trial court," Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998), and "will not consider trial court error as a basis for reversal where no timely objection was made," Marshall v. Commonwealth, 26 Va. App. 627, 636, 496 S.E.2d 120, 125 (1998). However, Rule 5A:18 provides for our consideration of an argument not raised before the trial court or a claim of trial court error not properly preserved "to enable [us] to attain the ends of justice." Rule 5A:18.

"'The ends of justice exception is narrow and is to be used'" only when the trial court error is "'clear, substantial and material.'" Redman v. Commonwealth, 25 Va. App. 215, 220-21, 487 S.E.2d 269, 272 (1997) (quoting Brown v. Commonwealth, 8 Va. App. 126, 132, 380 S.E.2d 8, 10-11 (1989)).

> To invoke the ends of justice exception to Rule 5A:18, the record must "affirmatively show[] that a miscarriage of justice has occurred, not . . . merely . . . that a miscarriage *might* have occurred." Mounce v. Commonwealth, 4 Va. App. 433, 436, 357 S.E.2d 742, 744 (1987). To satisfy this burden, an appellant must show "more than that the Commonwealth *failed* to prove an element of the offense. . . . The appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense[,] or the record must affirmatively prove that an element of the offense did not occur." Redman, 25 Va. App. at 221-22, 487 S.E.2d at 272-73.

Marshall, 26 Va. App. at 636-37, 496 S.E.2d at 125 (alterations in original).

The record does not support Breeden's contention that the "ends of justice" exception should apply. Indeed, it plainly demonstrates that Breeden admitted to possessing marijuana that was found inside his home. In light of this evidence, we cannot say that Breeden "was convicted for conduct that was not a criminal offense" or that "an element of the [possession of marijuana]

-10-

offense did not occur." Redman, 25 Va. App. at 221-22, 487 S.E.2d at 272-73. Breeden having failed to affirmatively persuade us "that a miscarriage of justice has occurred," we hold that the "ends of justice" exception does not require us to consider this argument on appeal. Mounce, 4 Va. App. at 436, 357 S.E.2d at 744. Hence, Rule 5A:18 prevents our review of this issue.

### III.  ADMISSION OF RECENT COMPLAINTS OF RAPE

Breeden further contends the trial court erred in admitting evidence of the complaining witness' recent complaints of rape to her friend and to Investigator Hilliards. We disagree.

The recent-complaint exception to the hearsay rule is codified as Code § 19.2-268.2, which provides, in pertinent part, as follows:

> Notwithstanding any other provision of law, in any prosecution for criminal sexual assault . . . the fact that the person injured made complaint of the offense recently after commission of the offense is admissible, not as independent evidence of the offense, but for the purpose of corroborating the testimony of the complaining witness.

"This statute makes admissible, as an exception to the hearsay rule, a recent complaint by the victim of" a rape. Mitchell v. Commonwealth, 25 Va. App. 81, 85, 486 S.E.2d 551, 553 (1997). Thus, under the usual standards, "[d]ecisions on the admissibility of evidence lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion." Id. at 84, 486 S.E.2d at 552.

In support of his claim that the trial court erred in admitting evidence of the recent complaints of rape, Breeden first argues that, at the time the trial court allowed such corroborative evidence to be admitted, "no evidence of rape had yet been presented by the Commonwealth." Because the Commonwealth had not established a *prima facie* case of rape, Breeden's argument continues, "the hearsay exception provisions of [Code] § 19.2-268.2 [did] not apply" because "there was no rape testimony to corroborate."

-11-

We find Breeden's argument meritless for two reasons. First, Code § 19.2-268.2 does not require, as a matter of law, that the Commonwealth establish a *prima facie* case of rape before the trial court may properly admit evidence of a recent complaint of rape. Breeden offers no authority, and we are aware of none, that compels the Commonwealth to do so. Code § 19.2-268.2 provides that evidence of the recent complaint is admissible simply "to corroborate the victim's testimony and other independent evidence of the offense," without regard to the sufficiency of the evidence. Id. at 86, 486 S.E.2d at 553. The order in which such evidence is admitted at trial is a procedural matter, left to the trial court's inherent discretion. See Justus v. Commonwealth, 222 Va. 667, 676, 283 S.E.2d 905, 910 (1981) (holding that "the conduct of a trial is committed to the trial judge's discretion").

Second, Breeden's assertion that the Commonwealth had not presented any evidence of rape when the evidence concerning the recent complaints was admitted is simply wrong. Prior to the admission of the recent-complaint evidence, the complaining witness testified concerning the events that occurred in her house. As we discussed above in considering the sufficiency of the evidence, her testimony clearly tended to show that she was raped.

Thus, we hold that the evidence was admissible "to corroborate [the complaining witness'] testimony and other independent evidence of the offense." Mitchell, 25 Va. App. at 86, 486 S.E.2d at 553.

Breeden also argues that the trial court should not have admitted the entire thirty-nine-page transcript of the complaining witness' statement because it gave a detailed and prejudicial account of the alleged rape. Even if the transcript was properly admitted, he further argues, "the only piece of evidence the trial court was allowed to consider was the fact that the complaint was made."

As Breeden correctly points out on brief, Code § 19.2-268.2 limits the admissibility of evidence concerning recent complaints of sexual assault to corroboration purposes only and proscribes its use as independent evidence. See Mitchell, 25 Va. App. at 85-86, 486 S.E.2d at 553 (observing that "[e]vidence of the victim's out-of-court complaint is not admissible as independent evidence of the offense" and, "[s]tanding alone, . . . is insufficient to support a conviction"). Moreover, as this Court noted in Mitchell, "[t]he 'recent complaint' exception embraces only the fact of the complaint and not details reported by the victim." Id. at 86, 486 S.E.2d at 553. "However, the scope of admissibility lies within the sound discretion of the trial court." Id.

Recognizing these proscriptions and principles, the trial judge responded to Breeden's objection to the admission of the interview transcript as follows:

> THE COURT: All right. Well, [the transcript of the interview] is some thirty-nine pages long, so I can't . . . I have reviewed certain pertinent parts, in which she describes non-consensual sex to the investigator. And therefore, based on [Code § 19.2-268.2], I will admit it. But I do not admit it, and will not consider it relevant to other issues not having to do with the nature of the sex act, and what permission was or was not granted.
>
> [PROSECUTOR]: I understand, sir.
>
> THE COURT: But I can't go through and try to expurgate it here. It is sort of woven throughout it. But it is not being admitted to prove various statements concerning the handling of the guns and things.

Breeden's counsel raised no additional objection to the trial court's decision.

Clearly, as the trial judge acknowledged, the interview transcript could not properly be considered in whole because it contained inadmissible details that went beyond the fact of the complaint of rape. The issue before us, then, is whether the trial court's admission of the transcript was outside the scope of the recent-complaint exception to the hearsay rule. We hold that, as qualified by the trial court, it was not.

This Court's reasoning in Mitchell is instructive. In that case, we considered the question whether the hearsay testimony of the victim's brother detailing the appellant's alleged proposition of an act of sodomy was admissible as evidence of the victim's recent complaint of a sexual assault. Id. at 85-86, 486 S.E.2d at 553. The appellant argued that the brother's testimony, which was offered to corroborate the twelve-year-old victim's testimony, was inadmissible because "the content of the brother's testimony went beyond reporting that the victim had complained of the offense and included inadmissible details, reported to the brother by the victim, but outside the scope of the 'recent complaint' exception." Id. at 86, 486 S.E.2d at 553. We disagreed with the appellant's position, reasoning as follows:

> The statute recognizes the probative value of the victim's recent complaint of a sexual offense. It is unreasonable to expect the victim of such an offense, particularly a child, to express his report in succinct, technical terms. It is consistent with human experience that such a victim will lodge his complaint in the form of a description of the event, and in that description lies his complaint of the offense. The brother's testimony described such a complaint. It exceeded in no significant way a report of the offense. The details of the victim's complaint were elements of the offense. Without those details, the complaint would have been incomplete. Thus, the brother's testimony was properly admitted into evidence as a report of the victim's recent complaint of a sexual assault.

Id.

Here, as in Mitchell, the statement to Investigator Hilliards was not reported in succinct and technical terms. Indeed, given the intricate nature of the events, the complaining witness' account of what happened that night was understandably not a simple, straightforward complaint of rape. Instead, she provided a lengthy, detailed description of the night's events, recounting, among other things, Breeden's assorted acts of violence against her, his pointing a gun at himself and threatening to kill himself, her denials of his requests to have sex, her fear that he would kill himself, and, ultimately, his having sex with her despite her denials of his requests. In other

-14-

words, the fact of the complaint of rape lay in the details of her statement. Thus, as we said in Mitchell, "[t]he details of the . . . complaint were elements of the offense. Without those details, the complaint would have been incomplete." Id. Accordingly, it was proper for the trial court to admit those details "to corroborate [the complaining witness'] testimony and other independent evidence of the offense." Id.

The fact remains, however, that the statement included inadmissible details that went beyond the fact of the complaint of rape. Finding it impossible to expurgate those inadmissible portions of the thirty-nine-page transcript from the admissible portions because they were inextricably "woven throughout" the statement, the trial judge admitted the entire transcript, with the qualification that he would consider only the admissible portions of the statement related to the alleged rape.

"A trial court is presumed to apply the law correctly." Shenk v. Shenk, 39 Va. App. 161, 169, 571 S.E.2d 896, 900 (2002). In addition, judges, unlike jurors, are presumed capable of distinguishing inadmissible evidence from admissible evidence. See Eckhart v. Commonwealth, 222 Va. 213, 216, 279 S.E.2d 155, 157 (1981) ("A judge, unlike a juror, is uniquely suited by training, experience and judicial discipline to disregard potentially prejudicial comments and to separate, during the mental process of adjudication, the admissible from the inadmissible, even though he has heard both."). Consequently, absent "clear evidence to the contrary," we presume, on appeal, "that a trial judge [has properly] disregard[ed] prejudicial or inadmissible evidence." Cole v. Commonwealth, 16 Va. App. 113, 116, 428 S.E.2d 303, 305 (1993). Trial judges are also presumed to have considered the presented evidence "only in its permissible context." Vanhook v. Commonwealth, 40 Va. App. 130, 135, 578 S.E.2d 71, 73 (2003). Hence, "if the trial court excludes evidence, then, presumptively, the judge does not consider the rejected evidence when ruling on the case." Id.

The trial judge specifically said he did "not admit [the statement], and [would] not consider it relevant to other issues not having to do with the nature of the sex act, and what permission was or was not granted." Absent any evidence in the record to the contrary, "we are unwilling to disregard the court's unequivocal statement" that it would limit its consideration of the transcript to those portions of it that were admissible in accordance with the recent-complaint exception to the hearsay rule. Overton v. Commonwealth, 260 Va. 599, 604, 539 S.E.2d 421, 424 (2000). This limited admission was within the trial court's discretion.

## IV. CONCLUSION

For these reasons, we hold the trial court did not err in finding the evidence sufficient beyond a reasonable doubt to support each of the convictions addressed herein and in admitting the complaining witness' recent complaints of rape under Code § 19.2-268.2. Accordingly, we affirm Breeden's convictions.

Affirmed.