ELDER, J.,
dissenting.
I join the majority’s holding in Part II.A. that admission of evidence of appellant Sandra Pierce’s perjury conviction was error. However, I believe the decision in Cole v. Commonwealth, 16 Va.App. 113, 428 S.E.2d 303 (1993), relied upon by the majority in Part II.B. to conclude the error was harmless, compels a contrary result in light of our interpretation of it in Craddock v. Commonwealth, 16 Va.App. 402, 429 S.E.2d 889 (1993). I would reverse the conviction and remand for a new trial, and, thus, I respectfully dissent.
In Virginia, non-constitutional error is harmless “[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached.” Code § 8.01-678.
“If, when all is said and done, [it is clear] that the error did not influence the [fact finder], or had but slight effect, ... the judgment should stand____But if one cannot say, with fair assurance, after pondering all that happened -without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected.... If so, or if one is left in grave doubt, the [judgment] cannot stand.”
Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001) (quoting Kotteakos v. United States, 328 U.S. 750, 764-65, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557, 1566 (1946)) (adopting Kotteakos test for determining whether non-constitutional error is harmless); see also Lavinder v. Commonwealth, 12 Va.App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc) (discussing harmless error analysis prior to Supreme Court’s adoption of Kotteakos test in Clay).
“ ‘[H]armless error analysis ... [is not] simply a sufficiency of the evidence analysis.’ ” Williams v. Commonwealth, 32 *620 Va.App. 395, 400, 528 S.E.2d 166, 169 (2000) (en banc) (quoting Hooker v. Commonwealth, 14 Va.App. 454, 457-58, 418 S.E.2d 343, 345 (1992)). We may uphold a decision on the ground that any error involved is harmless only if we can conclude, without usurping the trial court’s fact-finding function, “ ‘that the error did not influence the [fact finder], or had but slight effect.’ ” Clay, 262 Va. at 260, 546 S.E.2d at 731 (quoting Kotteakos, 328 U.S. at 764, 66 S.Ct. at 1248, 90 L.Ed. at 1566); see Lavinder, 12 Va.App. at 1006, 407 S.E.2d at 911 (noting court may not declare an error harmless if doing so requires “usurping the [fact finder’s] function”).
It is well settled under this test that the erroneous admission of evidence may be harmless if evidence of guilt is so “overwhelming” and the error so insignificant by comparison that we can conclude the error “failed to have any ‘substantial influence’ on the verdict.” United States v. Lane, 474 U.S. 438, 450, 106 S.Ct. 725, 732, 88 L.Ed.2d 814, 826 (1986) (quoting Kotteakos, 328 U.S. at 765, 66 S.Ct. at 1248, 90 L.Ed. at 1567); see also Rose v. Commonwealth, 270 Va. 3, 12, 613 S.E.2d 454, 459 (2005). The erroneous admission of evidence also is harmless if the evidence admitted in error is merely “cumulative” of other, undisputed evidence. Brecht v. Abrahamson, 507 U.S. 619, 639, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353, 373-74 (1993).
As we noted in Cole, “ ‘[a] judge, unlike a juror, is uniquely suited by training, experience and judicial discipline to disregard potentially prejudicial comments and to separate, during the mental process of adjudication, the admissible from the inadmissible, even though he has heard both.’ ” Cole, 16 Va.App. at 116, 428 S.E.2d at 305 (quoting Eckhart v. Commonwealth, 222 Va. 213, 216, 279 S.E.2d 155, 157 (1981)). “Consequently, we presume that a trial judge disregards prejudicial or inadmissible evidence ... ‘in the absence of clear evidence to the contrary’” in the record. Id. (quoting Hall v. Commonwealth, 14 Va.App. 892, 902, 421 S.E.2d 455, 462 (1992) (en banc)). However, even in a bench trial, “when the trial judge erroneously and unconditionally admits prejudicial evidence, we cannot presume that the trial judge disre *621 garded the evidence he ruled to have probative value.” Wilson v. Commonwealth, 16 Va.App. 213, 223, 429 S.E.2d 229, 235 (1993) (emphasis added).
The majority holds Cole compels the conclusion that the erroneous admission of evidence of appellant Pierce’s perjury conviction was harmless, and it considers only in passing, in a footnote, two aspects of Cole that I believe dictate a contrary result. In Cole, the evidence erroneously admitted was the fact that Cole had previously been convicted for grand larceny. 16 Va.App. at 115-16, 428 S.E.2d at 305. The fact of Cole’s prior convictions was admissible at his robbery trial for impeachment purposes, and evidence of the identity and nature of the prior offenses was harmless, we held, because Cole had already “opened the door” by “volunteering] the name of one of the felonies for which he had been convicted—grand larceny—without being asked to do so by the Commonwealth.” Id. at 115, 428 S.E.2d at 305. Thus, the erroneously admitted evidence of Cole’s second prior grand larceny conviction was merely cumulative of the undisputed evidence, first volunteered by Cole, that he had a first prior conviction for grand larceny. See, e.g., Brecht, 507 U.S. at 639, 113 S.Ct. at 1722, 123 L.Ed.2d at 373-74 (addressing “harmless-if-cumulative” analysis).
The majority’s application of Cole fails sufficiently to consider the impact of both Cole’s decision to testify in his bench trial for robbery and Cole’s “opening] the door” to cross-examination about the identity and nature of his prior convictions for theft by volunteering testimony that he had been convicted for grand larceny. We made clear the impact of these factors in Craddock, 16 Va.App. 402, 429 S.E.2d 889. Craddock involved a prosecutor’s reference in closing argument to the defendant’s earlier rejection of a plea offer. Id. at 403-04, 429 S.E.2d at 890-91. The defendant twice objected and pointed out the prosecutor was arguing facts not in evidence, but the trial court overruled those objections. Id. We concluded both that the prosecutor’s remarks were improper and, “based on the record, that the trial judge clearly failed to recognize the impropriety of these remarks because *622 he twice failed to sustain appellant’s objections thereto.” Id. at 406, 429 S.E.2d at 892. We explained further:
This case is clearly distinguishable from our recent holding in Cole v. Commonwealth, in which the challenged evidence concerning a prior conviction was admissible as it pertained to credibility. In Cole, there was no evidence that the trial judge considered the challenged evidence for any reason other than its proper purpose. We emphasized, however, that Cole did not hold that “the admission of improper evidence in a bench trial [could] never result in reversible error.” [16 Va.App.] at [116], 428 S.E.2d at 305. The facts in this case present just such an example. Here, the challenged information could not properly have been introduced into evidence for any purpose and should not have been included in the prosecutor’s argument. Therefore, we must presume, based on the trial judge’s failure to sustain appellant’s objection, that the [inadmissible] information ... was considered for an improper purpose.
Id. at 406-07, 429 S.E.2d at 892 (emphasis added) (citation omitted).
In Craddock, in contrast to Cole, the challenged argument referred to evidence that had not been admitted and, in fact, was not admissible for any purpose. Craddock, 16 Va.App. at 406-07, 429 S.E.2d at 892. Similarly, in Pierce’s case, because Pierce did not testify, the fact of her prior conviction was not admissible for any purpose,[5] as the majority recognizes in Part II.A. Although the trial court here acknowledged some potential for prejudicial effect from the challenged evidence when it *623 said “[w]e don’t have a jury so I’ll deny the motion for a mistrial,” it then said, “but I’m going to allow it [into evidence] because ... it’s part of the interrogation process.” (Emphasis added). The trial court’s statement that this evidence was “part of the interrogation process” does not rebut the presumption of Craddock that the admission into evidence of testimony concerning the perjury conviction shows the trial judge “considered [the evidence] for an improper purpose.” Craddock, 16 Va.App. at 407, 429 S.E.2d at 892. Compare id. with Breeden v. Commonwealth, 43 Va.App. 169, 186-88, 596 S.E.2d 563, 572-73 (2004) (applying principle in rape case where victim’s pre-trial statement was admissible as an exception to the hearsay rule only for the limited purpose of establishing a recent complaint of rape and where the trial judge, in a detailed and carefully articulated ruling, “specifically said he did ‘not admit [the challenged statement], and [would] not consider it relevant to ... issues” other than to establish a recent complaint of rape (emphasis added)).
Further, and contrary to the position taken by the majority in footnote 4, I do not believe the trial court’s partial articulation of the reason for its decision in this case sufficiently rebutted the Cole/Craddock presumption that the court improperly considered the admitted evidence of Pierce’s perjury conviction in determining her guilt. The trial court commented that, before defense witness Kisha LeBray testified, this was a “close” case on the issue of possession with intent to distribute. Its statement that “the testimony of Miss LeBray makes it pretty clear that this defendant was at least a co-possessor of the items” does not permit the conclusion that the court gave little or no consideration to the erroneously admitted evidence of the perjury conviction in determining what weight to give the testimony of LeBray. The court could have attributed greater credibility to LeBray’s testimony and drawn more extensive inferences from it precisely because it rejected Pierce’s denial of possession to police based on the court’s admission of evidence of Pierce’s prior perjury conviction.
*624 Applying harmless error terminology, neither the “cumulative” evidence nor the “overwhelming” evidence formulation of harmless error analysis supports the conclusion that the admission of the challenged evidence was harmless. See, e.g., Brecht, 507 U.S. at 639, 113 S.Ct. at 1722, 123 L.Ed.2d at 373-74 (holding improperly admitted evidence may be harmless if “cumulative”); Lane, 474 U.S. at 450, 106 S.Ct. at 732, 88 L.Ed.2d at 826 (holding improperly admitted evidence may be harmless if other evidence of guilt is “overwhelming” and the error is insignificant by comparison). Here and in Craddock, unlike in Cole, the admission of or reference to the challenged evidence was not merely cumulative of other, undisputed evidence. In addition, we cannot conclude on this record that the evidence of Pierce’s guilt was so “overwhelming” and the error so insignificant by comparison that the error “ ‘did not influence the [fact finder], or had but slight effect.’ ” Clay, 262 Va. at 260, 546 S.E.2d at 731 (quoting Kotteakos, 328 U.S. at 764, 66 S.Ct. at 1248, 90 L.Ed. at 1566). The evidence supported a finding that Pierce smoked two marijuana cigars on her front porch in full view of a police officer conducting surveillance, which supported a conviction for possession. However, to prove Pierce possessed marijuana with an intent to distribute, the Commonwealth relied on circumstantial evidence that she constructively possessed a much larger quantity of marijuana, approximately eight ounces, found inside her house. LeBray’s testimony, viewed in the light most favorable to the Commonwealth, established only that LeBray saw a bag of marijuana atop a dresser in one of two bedrooms in Pierce’s two-story house,[6] at a time when appellant Pierce was at some *625 unspecified location inside the house.[7] LeBray also testified that their cousin, James Pierce, was standing next to the bag of marijuana when LeBray first saw it and that, when LeBray reported the police were at the front door, James Pierce “grabbed [the bag]” and ran.[8] Given the weakness of the *626 evidence proving Pierce’s constructive possession of the large bag of marijuana, we cannot conclude, without usurping the trial court’s fact-finding function, that when the trial court determined what weight to give to Pierce’s statement to Detective Grover that she did not know what was going on in her house, the trial court’s erroneous admission of evidence of Pierce’s prior perjury conviction and her acknowledgment of guilt for that offense “ ‘did not influence the [fact finder], or had but slight effect.’ ” Clay, 262 Va. at 260, 546 S.E.2d at 731 (quoting Kotteakos, 328 U.S. at 764, 66 S.Ct. at 1248, 90 L.Ed. at 1566).
Because I believe our prior holdings in Cole and Craddock compel the conclusion that the trial court’s error was not harmless, I would reverse the conviction and remand for a new trial. Thus, I respectfully dissent.

. Even if Pierce had later opted to testify, our case law would support the conclusion that this decision would not render harmless the court’s knowingly erroneous admission of impeachment evidence in the Commonwealth’s case-in-chief. Cf. Purvis v. Commonwealth, 31 Va.App. 298, 309-10, 522 S.E.2d 898, 903 (2000) (holding erroneous refusal to sever offenses in bench trial is not harmless error where only fact that would render refusal harmless is defendant’s decision to testify and clear evidence establishes “that the trial court ... used the 'harmless error doctrine ... prospectively ... as a basis to disregard an established rule of law’ ” (quoting Hackney v. Commonwealth, 28 Va.App. 288, 296, 504 S.E.2d 385, 389 (1998) (en banc))).

. The majority asserts "LeBray testified that the marijuana was on top of [appellant] Pierce's dresser in [appellant Pierce’s] bedroom.” The Commonwealth does not contend, however, that the bedroom was appellant’s, and the evidence fails to support the majority's assertion that the bedroom was appellant’s. Although appellant Sandra Pierce was the lessor of the residence, the evidence established the residence had at least two bedrooms. As many as eight people may have been present when the police "froze” the scene that day while they obtained a warrant, and no evidence established how many people resided with appellant on a full-time or part-time basis. LeBray’s testimony indicat *625 ed that James Pierce was present that day while taking a shower and changing clothes, which suggests he may have been at least a part-time resident. Appellant’s statement to Detective Grover, offered by the Commonwealth, suggested that appellant had children, who may also have resided with her. On the subject of where the marijuana was located, LeBray testified that, "when I ran upstairs, she has like the two-piece bedroom set, I think it’s called a hutch, the taller dresser, it was on top of the dresser,” and James Pierce was "standing right beside it.” LeBray did not testify that the bedroom in which the dresser was located was a bedroom in which appellant Pierce resided or slept. The mere fact that LeBray referred to the furniture as appellant Pierce’s does not preclude the reasonable inference that appellant, the lessor, had furnished the entire house and routinely occupied some other bedroom.

. Although LeBray testified on direct that appellant Pierce "was present” while James Pierce was standing next to the marijuana atop the dresser in the upstairs bedroom, LeBray said "[appellant Pierce] was present but she had just walked in ” (emphasis added), and LeBray did not indicate in what part of the house appellant was present while James Pierce stood next to the marijuana. LeBray, still testifying on direct, clarified that while she and appellant were in the house, LeBray saw the marijuana only while she, LeBray, was upstairs and that appellant was not upstairs during that period of time. The trial court was free to disregard some or all of LeBray’s testimony, but if it disregarded the testimony that appellant was present only downstairs, it was left with the vague testimony that appellant "was present” at some unspecified location in the house "when [LeBray] went in the house [and] Mr. Pierce had the marijuana on top of the dresser” in the upstairs bedroom. Thus, this evidence, viewed in the light most favorable to the Commonwealth, establishes only that appellant was present inside the house when the marijuana was in plain view on the dresser and that she may or may not have seen it. At its best, this testimony constituted very weak evidence that appellant exercised joint constructive possession of the bag of marijuana that James Pierce had in his actual possession.

. Thus, the record also does not support the majority's statement that "LeBray testified she never saw anyone else,” which would include her first cousin James Pierce, "in actual possession of the marijuana.” LeBray testified only that, "when [she] first saw [the bag of marijuana],” Mr. Pierce "was standing right beside it” and that he did not "have it in his possession later downstairs.” LeBray also testified that, *626 when she announced the police were at the front door, Mr. Pierce "grabbed it” and ran through "the second bedroom” and that she could not see whether he had the marijuana in his possession after that point in time because she had turned to go back downstairs.