COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Ortiz, Chaney and Senior Judge Haley
Argued at Richmond, Virginia


HERBERT WILLIAM JONES, JR.

                                      MEMORANDUM OPINION[*] BY
v.       Record No. 0712-22-2                 JUDGE DANIEL E. ORTIZ
                                          MAY 23, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF NOTTOWAY COUNTY
Paul W. Cella, Judge

(David G. Moss; The Law Office of David G. Moss, PLLC, on
brief), for appellant.  Appellant submitting on brief.

Robert Bauer, Assistant Attorney General (Jason S. Miyares,
Attorney General; Leanna C. Minix, Assistant Attorney General, on
brief), for appellee.


Following a bench trial, Herbert William Jones, Jr. was convicted of one count of breaking

and entering and two counts of petit larceny.[1]  The trial court imposed a total sentence of twenty

years and thirty-three months with fourteen years and forty-four months suspended, for an active

period of incarceration of five years and one month.  On appeal, Jones argues that the trial court

erred in excluding testimony from his expert witness regarding the accuracy of his GPS ankle

monitor.  Jones further contends that the evidence was insufficient to support his convictions,

arguing that the Commonwealth failed to prove he was the perpetrator.  Because the trial court did

not abuse its discretion in excluding the testimony of one of Jones's expert witnesses and because

there was sufficient evidence that Jones committed all three offenses, we affirm the trial court.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413.

[1] Jones did not appeal his conviction for a good behavior violation.

BACKGROUND[2]

On May 9, 2020, Qadira Stewart's husband mowed his lawn before stowing the lawnmower near his house. The next morning, Stewart noticed the lawnmower was missing. After hearing the Stewarts' lawnmower was missing, the Stewarts' neighbor, Michael Lee Cole, reviewed surveillance videos captured by his eight security cameras. The videos showed an individual enter Cole's carport at 11:49 p.m. for a matter of seconds, and then leave while covering his face. As he reviewed the videos, Cole visually tracked the individual's movements to the Stewarts' house, where he saw the shadow of an individual carrying away a lawnmower. The individual took the lawnmower from the Stewarts' house, crossed the street, and placed it near a tree in the yard of the house to the left of Cole's house. Cole was unable to identify the individual in the video. Cole captured several screenshots of the activity near his house but did not preserve the actual videos.

In the early morning hours of Sunday, May 31, 2020, several members of the Smith family—Anne Smith, Peter Smith, and two of their daughters—were asleep in their house. The day before, Anne Smith had placed her pocketbook containing her zippered wallet on her dining room table. In the early hours of that Sunday morning, R.S., a minor child of Anne and Peter Smith, heard the back door next to her ground level bedroom open, and for approximately ten minutes she heard footsteps walking up and down the stairs leading to the dining room. R.S. alerted her parents as to what she heard. At 3:00 or 3:30 a.m., Peter and Anne Smith went downstairs to investigate. Peter saw that the wooden back door was unlocked and the adjoining storm door was uncharacteristically cracked open. Peter and Anne searched the house for signs of any disturbance

---

[2] "In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)). In doing so, we discard any of Jones's conflicting evidence, and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Id.* at 473.

but did not see any other than the open and unlocked doors. Neither Anne nor Peter noticed that anything was missing but did not check Anne's pocketbook at that time. When the Smiths awoke later that morning, nothing appeared to be out of place. Anne took her pocketbook containing her wallet with her to church that day but did not open it. In the afternoon of Sunday, May 31, 2020, Anne noticed the wallet in her pocketbook was open and about $400 or $500 was missing. The last time she had seen that money had been one or two days earlier. Neither R.S. nor Peter had taken the money from Anne's pocketbook.

Jones's terms of probation from a prior conviction required him to wear a GPS ankle monitoring system. In accordance with federal standards, Jones's GPS device reports his position within thirty feet with ninety percent accuracy. The GPS device transmits its location once per minute when in motion. When the GPS device has not moved for more than ten minutes, the GPS device transmits its location once per hour. On May 9, 2020, GPS location data from Jones's monitor placed him within the area of the Stewarts' lawnmower at 11:51 p.m. The data from May 31, 2020, showed Jones in and around the Smiths' home at 3:38 a.m. Six data points indicated Jones's presence inside the house.

In addition to the two counts of petit larceny and one count of breaking and entering, Jones was tried on two counts of spying into a dwelling—a house belonging to Troy and Glenda Ford—with offense dates in June 2020. Jones's GPS data from the dates and times for the June offenses were consistent with Jones being inside the Fords' house. However, the Fords testified that Jones was never inside their house. At the close of the Commonwealth's evidence, the trial court granted Jones's motion to strike both spying-into-a-dwelling charges. Jones subsequently called Christopher Elke, who testified as a GPS expert. During Elke's direct examination, Jones attempted to elicit testimony about the GPS data from the June offense dates. The Commonwealth objected to the relevance of the June GPS data, as the June charges were no longer before the court. Jones

- 3 -

proffered that the June GPS data was relevant to show inaccuracies with the GPS data, notably that the GPS data indicating that Jones was inside the dwelling was contradicted by witness testimony. The trial court sustained the Commonwealth's objection on the ground that the charges from June were no longer before the court. Jones was subsequently convicted of petit larceny of the Stewarts' lawnmower, the petit larceny of Anne's cash, and breaking and entering into the Smiths' house. This appeal followed.

ANALYSIS

I. The Trial Court Did Not Abuse Its Discretion When It Excluded Certain Expert Testimony

Jones first asserts that the trial court erred in excluding Elke's testimony concerning the accuracy of the GPS monitor. Jones argues that testimony referencing two specific instances of inaccuracy were relevant to show that "[t]he margin of error is clearly true and not just some statistic." The trial court acted within its discretion in excluding this testimony because, although relevant, it was cumulative.

"It is well-settled that '[d]ecisions regarding the admissibility of evidence "lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion."'" *Nottingham v. Commonwealth*, 73 Va. App. 221, 231 (2021) (quoting *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019)). "A court has abused its discretion if its decision was affected by an error of law or was one with which no reasonable jurist could agree." *Tomlin v. Commonwealth*, 74 Va. App. 392, 409 (2022). "In evaluating whether a trial court abused its discretion, . . . we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action." *Kenner v. Commonwealth*, 299 Va. 414, 423 (2021) (quoting *Carter v. Commonwealth*, 293 Va. 537, 543 (2017)).

Jones attempted to elicit Elke's expert opinion about the accuracy of GPS data from June offense dates. The June GPS data was consistent with Jones's presence inside the Fords' house,

but the testimony indicated that he never entered the home, but rather was on the front porch. Jones conceded that he was in this general area on the dates and times in question and does not dispute that he was within thirty feet of the Fords' house.

"'Relevant evidence' means evidence having any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence." Va. R. Evid. 2:401. "Relevant evidence may be excluded if . . . the evidence is needlessly cumulative." Va. R. Evid. 2:403(b). The GPS's accuracy in placing Jones inside the home is a fact at issue and therefore relevant. However, the record is replete with recitations that the accuracy of the GPS device is limited and is only expected to accurately determine position within thirty feet, ninety percent of the time. When the trial court excluded testimony interpreting two specific instances in which Jones's GPS system reported positions inside a house when Jones was actually outside, the record included ample evidence that GPS data points inside a house but less than thirty feet from the exterior of the house may be inaccurate because it is within the margin of error for the GPS monitor. Therefore, the evidence Jones sought to introduce provided no new evidence for the court to consider; it was cumulative evidence about the limitations of the GPS monitor's accuracy. We therefore conclude that the trial court did not abuse its discretion in excluding this testimony.

## II. Sufficiency of Proof of Identity

This Court also finds no merit in Jones's contention that the trial court erred in finding the evidence sufficient to prove that he was the individual who committed the crimes of petit larceny and breaking and entering. The evidence sufficiently supports Jones's convictions and is not plainly wrong. "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original)

(quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "The question on appeal, is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

### A. Petit Larceny

"Any person who . . . [c]ommits simple larceny not from the person of another of goods and chattels of the value of less than $500 . . . shall be deemed guilty of petit larceny." Code § 18.2-96 (Repl. Vol. 2018).[3] Jones argues the evidence failed to establish that he was the person who took the lawnmower and cash. "At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt." *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013) (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 423 (2003)). On appeal, we review the trier of fact's determination regarding the identity of the criminal actor in the context of "the totality of the circumstances." *Brown v. Commonwealth*, 37 Va. App. 507, 523 (2002) (quoting *Satcher v. Commonwealth*, 244 Va. 220, 249 (1992)).

As with any element of an offense, identity may be proved by direct or circumstantial evidence. *Crawley v. Commonwealth*, 29 Va. App. 372, 375 (1999). "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently

---

[3] The threshold for elevating petit larceny to grand larceny was $500 at the time of the offense and was increased to $1000 effective July 1, 2020. *See* 2020 Va. Acts cc. 89, 401.

convincing to exclude every reasonable hypothesis except that of guilt." *Holloway v. Commonwealth*, 57 Va. App. 658, 665 (2011) (en banc) (quoting *Coleman v. Commonwealth*, 226 Va. 31, 53 (1983)). "[C]ircumstantial evidence is not viewed in isolation." *Id.* (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). "While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion." *Pick v. Commonwealth*, 72 Va. App. 651, 668 (2021) (quoting *Finney v. Commonwealth*, 277 Va. 83, 89 (2009)). The fact that "[a] defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded. What weight should be given evidence is a matter for the [factfinder] to decide." *Edwards v. Commonwealth*, 68 Va. App. 284, 301 (2017) (alterations in original) (quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 9 (2004)).

Jones argues that "no other circumstantial evidence was presented to further identify [Jones] as the perpetrator" of the larceny of the lawnmower. The evidence, however, established that Jones was at the Stewarts' house at the same time that the video surveillance indicated that a person removed the lawnmower from the area. Additionally, Jones conceded his presence in the general area and the GPS data placed Jones at the Stewarts' house. Screenshots from the video surveillance recording showed an individual whose movements were tracked to the Stewarts' house. Cole testified that while viewing the surveillance video he was able to track the individual's movements from his house to the Stewarts' house, and back to his neighbor's house where the individual placed a lawnmower against his neighbor's tree. The court had the opportunity to view both Jones and the stills from the surveillance video and make a visual comparison. The record supports that a rational trier of fact could find that Jones was the individual who took the Stewarts' lawnmower.

The record also supports the finding that Jones was the individual who broke into the Smiths' home and took money from Anne's wallet. Although there was no eyewitness testimony, there is sufficient circumstantial evidence such that a rational trier of fact could conclude that Jones unlawfully entered the home and took the money. The GPS monitoring evidence establishes Jones's presence in or around the Smiths' house at the time the Smiths' daughter heard an intruder. The record shows that R.S. heard a person inside the family home opening the back door and climbing the stairs several times. A reasonable factfinder could infer that Jones was the individual that R.S. heard.

The evidence establishes that Anne discovered the money in her pocketbook to be missing after the break-in and that the last time she saw the money in her pocketbook was the day prior. The record also shows that neither her husband nor her daughter, R.S., took the money. At the time of the break-in, the pocketbook was located on the dining room table and would have been immediately visible upon climbing the stairs from the ground level after entering the back door. Upon searching the house after hearing the intruder, the Smiths did not notice that anything else was displaced or missing. A reasonable factfinder could infer that Jones broke into the Smiths' home looking for valuables, found the cash in Anne's pocketbook, and took the cash before leaving the premises.

## B. Breaking and Entering

Finally, Jones argues that the trial court erred by finding that he was the individual who unlawfully entered the Smiths' house. "[T]he Commonwealth was required to establish that [Jones] committed a breaking and entering of a dwelling of another with intent to commit" a

larceny.[4]  *Pooler v. Commonwealth*, 71 Va. App. 214, 220 (2019); *see* Code § 18.2-91.  We disagree with Jones's assertion.

The record supports a finding that Jones's entry into the house was not lawful, as three members of the Smith family testified that Jones did not have permission to be in their house. "[W]hen an unlawful entry is made into a dwelling of another, the presumption is that the entry was made for an unlawful purpose, and the specific intent with which such entry was made may be inferred from the surrounding facts and circumstances."  *Vincent v. Commonwealth*, 276 Va. 648, 653 (2008) (quoting *Ridley v. Commonwealth*, 219 Va. 834, 836 (1979)).  "In a prosecution for statutory burglary under Code § 18.2-91, proof that the accused unlawfully entered another's dwelling supports an inference that the entry was made for an unlawful purpose."  *Breeden v. Commonwealth*, 43 Va. App. 169, 181 (2004) (quoting *Robertson v. Commonwealth*, 31 Va. App. 814, 822 (2000)).

As with the previous two charges, there is sufficient evidence in the record to support the finding that Jones was the perpetrator.  The GPS data shows Jones was present in or around the Smiths' house at approximately the same time that an unknown person was heard entering the ground level back door of the Smiths' home and moving throughout the house.  The record shows that R.S. heard the back door open and subsequently heard footsteps walking up and down the stairs.  Upon investigating, Peter discovered the back door to the house was unlocked and the adjoining screen door was cracked open.  Although this evidence is circumstantial, it is sufficient for a rational trier of fact to find beyond a reasonable doubt that Jones was the individual who committed a breaking and entering of the Smiths' house.  *Holloway*, 57 Va. App. at 665.

---

[4] Appellant does not raise issue with sufficiency of the evidence in showing a breaking or unlawful entering of the Smiths' home, but takes issue with the sufficiency of the evidence in showing that Jones was the individual who broke into the home and took the money.

CONCLUSION

The trial court did not abuse its discretion in excluding expert testimony that was cumulative, and a rational trier of fact could reasonably conclude that Jones is guilty of all three offenses. For these reasons, we affirm the trial court's judgment.

*Affirmed.*