COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Huff, AtLee and Malveaux
Argued by videoconference


DARRIUS DONTA COPELAND

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0825-20-1            JUDGE MARY BENNETT MALVEAUX
                                                         OCTOBER 5, 2021
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Timothy S. Wright, Judge

Andrew M. Sacks (Sacks & Sacks, P.C., on brief), for appellant.

Rachel L. Yates, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Darrius Donta Copeland ("appellant") was convicted of first-degree murder, in violation of

Code § 18.2-32, and use of a firearm in the commission of a felony, in violation of Code

§ 18.2-53.1.  On appeal, he contends that the trial court erred in denying his motions to strike and to

set aside the verdict because the evidence was insufficient in establishing that he was the criminal

agent in the shooting of the victim.  He also argues that the evidence was insufficient to support the

finding of premeditation necessary for a conviction of first-degree murder.  For the following

reasons, we affirm.

## I.  BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial."  Gerald v.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Commonwealth, 295 Va. 469, 472 (2018) (quoting Scott v. Commonwealth, 292 Va. 380, 381 (2016)).

In August 2016, Timothy Croskey ("the victim") was living with his mother, Tracy Croskey. The victim and Dequashia Copeland ("Dequashia")[1] had a daughter, T.C., who was six years old at the time. Darrius Copeland ("appellant") is Dequashia's brother.

The victim and Dequashia had been in a relationship, but that relationship had ended when T.C. was four or five years old. T.C. lived with Dequashia. At first, the victim and Dequashia had an informal custody arrangement, but they later went to court to determine custody arrangements. Dequashia and the victim had a custody agreement where the victim would get the child at certain periods, including a two-week visitation in both July and August. According to Croskey, the court further ordered that T.C. be exchanged in neutral locations because the victim and Dequashia had "a terrible relationship." Croskey observed the victim and Dequashia argue during one exchange.

In July 2016, the victim did not have T.C. for his two-week July visitation because Dequashia would not allow the child to go for her visitation. T.C. started her two-week August visitation with the victim on August 12, 2016. During this visitation, and while at Croskey's house, T.C. often spoke with Dequashia via cell phone.

On August 18, 2016, the victim and Dequashia had a scheduled court date on the victim's motion to reduce his child support obligation to her. The day prior to this scheduled court date, August 17, 2016, the victim came home from work around 4:00 or 4:30 p.m. and was going to go pick up his other daughter. T.C. called Dequashia and told her that she did not want to accompany the victim on this trip. With the cell phone on speaker phone, Croskey heard

---

[1] Because appellant's sister has the same last name as appellant, we refer to her by her first name to provide clarity.

Dequashia tell T.C. that she did not have to go with the victim. The victim also heard this conversation, and stated, "She's my daughter, too, and if I want to take her with me, I can do that." In response, Dequashia, while on speaker phone, told him, "I'm going to have somebody kill you."[2] The victim then took the cell phone from T.C., took it off speaker phone, and "really started arguing" with Dequashia.

About twenty minutes later, around 5:00 p.m., Officer Brian Justice of the Chesapeake Police Department arrived at Croskey's home to conduct a "wellness check" on T.C. Dequashia had called police and reported that T.C. had called her, "hysterical and crying," to say that the victim had been "threatening to beat her up." During the wellness check, which lasted about ten minutes, Justice did not observe any injuries on T.C. and decided not to take any action in relation to Dequashia's call. Dequashia "seemed agitated and unsatisfied with [Justice's] handling of the situation" when the officer reported his findings to her. Dequashia told Justice that she wanted him to remove T.C. from Croskey's home and return the child to her. The officer responded that he could not do that because Dequashia had to abide by the terms of the custody agreement.

After Officer Justice left Croskey's residence, the victim left to pick up his other daughter and told Croskey that he would be right back. Croskey then heard gunshots, opened the front door, and found the victim lying on the doorstep. When police arrived, they found the victim in this location and saw that he was suffering from multiple gunshot wounds. Police also found .45 caliber cartridge casings near the front doorway of the house. Testing revealed that the casings were all fired from the same firearm. The victim died while being transported to the hospital.

---

[2] At trial, appellant objected to the introduction of this statement as hearsay. The trial court overruled the objection, finding that the statement was not hearsay because it was offered to show appellant's motive rather than for the truth of the matter asserted.

At around 5:30 p.m. that evening, a neighbor of Croskey's heard three gunshots. The neighbor had a security camera at his home and provided the video from that evening to police. The video was played for the jury.

The security video shows a silver vehicle stopping a few blocks from the victim's home at 5:27 p.m. A person dressed all in black got out of the car, which then made a U turn. Another neighbor of Croskey's testified that the car stopped again after driving a short distance. The security video then shows the person in black walking down the street for about a block before turning onto another street in the direction of Croskey's house. A few minutes later, the security video shows the person running away from Croskey's house and retracing the path they had taken just minutes before.

Shawn Marshall, who lived a few houses down from Croskey, is visible on the security video when he arrives home in his car. In the video, Marshall arrives after the person in black has walked toward Croskey's house but before that person has run back. Marshall testified that before he got out of his car, he heard gunshots. Immediately after hearing the gunshots, Marshall saw a "[s]lender guy with all black on, black hat, black shirt with braids" running away down the street. At trial, Marshall stated that the individual seen running in the video was "consistent with" the person he saw immediately after he heard the gunshots.

Croskey testified that the person wearing all black in the security video was appellant. Croskey had "[n]o doubt" it was appellant because he "ha[d] a distinctive walk . . . like a gallop in a sense." She also identified the silver vehicle as belonging to Devin Copeland, the brother of appellant and Dequashia.

That same evening, at about 5:30 p.m., John Allen saw a vehicle stopped near his home, which was "off to the left" several streets over from the shooting. Allen thought that the car had "broke[n] down." Two men got out of the car and "jogged off."

- 4 -

Around 7:30 p.m. the evening of the shooting, a police officer saw a silver Dodge Stratus stopped near Allen's house which appeared to have the same hubcap and rim as the vehicle shown in the security video. Police determined that the car was registered to Devin Copeland, who later that evening came to the car's location near Allen's house to ask about the vehicle. Police found a cigarette butt in the passenger side front door handle of the car. Appellant could not be eliminated as a major contributor to the DNA mixture found on the cigarette butt. Police found another car parked next to the Dodge Stratus, and inside this vehicle they found appellant's wallet and driver's license.

After the shooting, Officer Justice received a message from Dequashia asking him to call her. When he called her, Dequashia was "much calmer" than during the call earlier that day. Justice reported that Dequashia "wished to know if she still needed to follow the guidelines of the custody agreement or if she could come and pick up [T.C.]." She told Justice that she was asking because either T.C. or a neighbor had said that something had happened to the victim. She did not ask Justice what had happened to the victim.

After the Commonwealth rested, appellant moved to strike the evidence, which the court denied. Appellant presented no evidence, and then renewed his motion to strike, which the court again denied.

The jury found appellant guilty of first-degree murder and use of a firearm in the commission of a felony. Following trial, appellant filed motions to set aside the verdict and for a new trial. The trial court denied those motions. This appeal followed.

## II. ANALYSIS

Appellant argues that the trial court erred in denying his motions to strike and to set aside the verdict because the evidence was insufficient to support his convictions.

On appeal, when reviewing a sufficiency challenge, "an appellate court considers the evidence in the light most favorable to the Commonwealth, the prevailing party below, and reverses the judgment of the trial court only when its decision is plainly wrong or without evidence to support it." Ellis v. Commonwealth, 70 Va. App. 385, 387 (2019) (quoting Marshall v. Commonwealth, 69 Va. App. 648, 652-53 (2019)). Further, "[i]f there is evidence to support the conviction[], the reviewing court [may not] substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial." Rams v. Commonwealth, 70 Va. App. 12, 28 (2019) (alterations in original) (quoting Clark v. Commonwealth, 279 Va. 636, 641 (2010)).

Appellant first argues that the evidence was insufficient to prove that he was the person who shot the victim. He asserts that the evidence merely created a suspicion or probability that he committed the offense, and also failed to exclude every reasonable hypothesis of innocence, including that someone other than appellant shot the victim.

"At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt." Cuffee v. Commonwealth, 61 Va. App. 353, 364 (2013) (quoting Blevins v. Commonwealth, 40 Va. App. 412, 423 (2003)). Identity may be proved by circumstantial evidence. Crawley v. Commonwealth, 29 Va. App. 372, 375 (1999). This category of evidence "is as competent and is entitled to as much weight as direct evidence." Breeden v. Commonwealth, 43 Va. App. 169, 177 (2004) (quoting Coleman v. Commonwealth, 226 Va. 31, 53 (1983)). "[W]hile no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a conclusion." Commonwealth v. Moseley, 293 Va. 455, 463 (2017) (second alteration in original) (quoting Muhammad v. Commonwealth, 269 Va. 451, 479 (2005)). However, "circumstantial evidence [must be] sufficiently convincing to exclude every reasonable hypothesis except that of

- 6 -

guilt." Kelley v. Commonwealth, 69 Va. App. 617, 629 (2019) (quoting Pijor v. Commonwealth, 294 Va. 502, 512 (2017)).

Contrary to appellant's argument, the circumstantial evidence in this case was sufficient to support the jury's conclusion that he was the criminal agent in the shooting of the victim.

Notably, the Commonwealth's evidence placed appellant in close proximity to the crime scene both immediately before and after the shooting. Appellant was recorded walking toward Croskey's house at 5:27 p.m. Within minutes, the victim was fatally shot in front of Croskey's home, and appellant was recorded fleeing from the crime scene. Appellant could not be eliminated as a contributor to the DNA profile that was found in his brother's car and his driver's license was found in a car parked next to his brother's, allowing for the reasonable inference that appellant fled to this area following the shooting but was unable to drive away in his brother's car, which appeared to be "broken down." It is well established that "[f]light following the commission of a crime is evidence of guilt." Clagett v. Commonwealth, 252 Va. 79, 93 (1996); see also Jones v. Commonwealth, 279 Va. 52, 58 (2010) (explaining that flight from a crime scene "generally cannot be explained in terms of innocent human behavior" and therefore "a court may consider [such flight] in the context of all the facts presented as evidence tending to show the defendant's consciousness of guilt of the crime committed").

In addition, Dequashia, appellant's sister, had "a terrible relationship" with the victim, the father of her child. The day following the shooting, Dequashia and the victim had a court date scheduled regarding the victim's request to lower his child support payment. During an argument the same day of the shooting, Dequashia threatened to have someone kill the victim due to disagreements they had regarding their child, appellant's niece. After the shooting, Dequashia seemed "much calmer" when talking to police and asked if "she still needed to follow the guidelines of the custody agreement." The jury, as fact finder, could have reasonably inferred that appellant carried out his sister's threat and shot the victim on her behalf.

Viewed in totality, the circumstantial evidence of appellant's presence at and then flight from the crime scene, together with his motive, was sufficient to prove beyond a reasonable doubt that he was the criminal agent of the offenses.

However, appellant contends that the evidence failed to exclude the reasonable possibility that someone other than he shot the victim. Although appellant offers a hypothesis of innocence, the Commonwealth "is not required to disprove every remote possibility of innocence, but is, instead, required only to establish guilt of the accused to the exclusion of a reasonable doubt." Cantrell v. Commonwealth, 7 Va. App. 269, 289 (1988) (quoting Bridgeman v. Commonwealth, 3 Va. App. 523, 526-27 (1986)); see also McCary v. Commonwealth, 42 Va. App. 119, 127 (2003) (observing that the Commonwealth need only "exclude reasonable hypotheses of innocence that flow from circumstantial evidence"). In addition, "[b]y finding the defendant guilty, . . . the factfinder 'has found by a process of elimination that the evidence does not contain a reasonable theory of innocence.'" James v. Commonwealth, 53 Va. App. 671, 681 (2009) (quoting Haskins v. Commonwealth, 44 Va. App. 1, 9 (2004)). That conclusion "is itself a 'question of fact,' subject to deferential appellate review." Id. Here, the jury rejected the appellant's contention that another person shot the victim. Because the jury, sitting as fact finder, could have concluded that appellant's hypothesis of innocence was unreasonable in light of the incriminating circumstantial evidence of his guilt, we will not disturb the jury's finding on appeal.

Appellant further argues that the evidence was insufficient to establish the element of premeditation necessary for first-degree murder and that at most the evidence was sufficient to support a conviction for second-degree murder. He contends that the evidence failed to establish that he had formed a specific intent to kill.

Code § 18.2-32 provides, in pertinent part, that "[m]urder . . . by any willful, deliberate, and premeditated killing . . . is murder of the first degree, punishable as a Class 2 felony." Premeditation, or the "adopt[ion] [of] a specific intent to kill . . . is what distinguishes first[-] and

second[-]degree murder." Smith v. Commonwealth, 239 Va. 243, 259 (1990) (quoting Rhodes v. Commonwealth, 238 Va. 480, 485 (1989)). Although the accused need not have planned the killing for any specific period of time, "[t]he intent to kill must come into existence at some time before the killing." Smith v. Commonwealth, 220 Va. 696, 700 (1980).

"Premeditation and formation of an intent to kill seldom can be proved by direct evidence. A combination of circumstantial factors may be sufficient." Betancourt v. Commonwealth, 26 Va. App. 363, 373 (1998) (quoting Rhodes, 238 Va. at 486). "Whether a killing was accidental or intentional and premeditated is a question of fact and, absent eyewitness testimony or a voluntary confession, that question necessarily turns upon the import of circumstantial evidence." Edmonds v. Commonwealth, 229 Va. 303, 308 (1985). Relevant factors to determining premeditation and the intent to kill include "the brutality of an attack . . . [and] efforts to avoid detection." Aldridge v. Commonwealth, 44 Va. App. 618, 655-56 (2004). "Also, although 'motive is not an essential element of the crime, it is relevant and often most persuasive upon the question of the actor's intent.'" Id. at 656 (quoting Epperly v. Commonwealth, 224 Va. 214, 232 (1982)).

As recited above, in the instant case, appellant was recorded walking with deliberation toward Croskey's home. Within minutes, appellant shot the victim several times and killed him. Appellant immediately fled from the crime scene to his brother's waiting car. The victim and Dequashia, appellant's sister, had a contentious relationship, and she threatened to have someone kill him. Based on these facts, a reasonable finder of fact could conclude beyond a reasonable doubt that appellant shot and killed the victim with premeditation and therefore he was guilty of first-degree murder.

### III. CONCLUSION

We hold that the evidence was sufficient to prove that appellant was the criminal agent in the shooting of the victim. In addition, we hold that the evidence was sufficient to support the

finding that appellant premeditated the victim's murder.  Consequently, we affirm the judgment of the trial court.

<u>Affirmed.</u>